Dominguez *v.* Liberty Mutual Insurance Company.

RALPH DOMINGUEZ *vs.* LIBERTY MUTUAL INSURANCE COMPANY.

Suffolk. November 6, 1998. - March 3, 1999.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Insurance,* Motor vehicle personal injury protection benefits, No-fault insurance. *Statute,* Construction.

An automobile insurer is not required, under the last paragraph of G. L. c. 90, § 34A, the no-fault motor vehicle insurance law, to pay for medical expenses between $2,000 and $8,000 as personal injury protection benefits, if the claimant's health insurer (a health maintenance organization) would have covered the medical services had the claimant sought treatment in accordance with his health insurer's plan. [114-118] IRELAND, J., with whom LYNCH, J., joined, dissenting.

CIVIL ACTION commenced in the Boston Municipal Court Department on January 26, 1996.

The case was heard by *Raymond G. Dougan, Jr.,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Caroline M. O'Brien* for the plaintiff.

*Robert G. Taylor* (*David R. Cain* with him) for the defendant.

*Edwin L. Wallace & Michael Najjar* for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

*David I. Finnegan & John G. Ryan,* for Domestic Automobile Insurers of Massachusetts, Inc., & another, amici curiae, submitted a brief.

GREANEY, J. We are concerned in this case with an interpretation of personal injury protection (PIP) coverage, G. L. c. 90, § 34A, the no-fault motor vehicle insurance law. The question is whether, under the last paragraph of § 34A, an automobile insurer must pay for medical expenses between $2,000 and $8,000 as PIP benefits, if the claimant's health insurer would have covered the medical services had the claimant sought

treatment in accordance with his health insurer's plan. We conclude that the automobile insurer is not required to make such payments.

The facts are undisputed. On March 23, 1994, the plaintiff was injured in an automobile accident while driving his mother's car which was insured by the defendant under the standard Massachusetts automobile policy. At the time of the accident, the plaintiff belonged to a health maintenance organization, Harvard Community Health Plan (HCHP).

The plaintiff was treated for his injuries by a physician. By July 22, 1995, the plaintiff had received $2,785 worth of medical care, and the defendant had paid the plaintiff $2,000 pursuant to PIP coverage. The defendant, however, denied payment of the additional $785 because it exceeded $2,000. The defendant would not consider payment until the plaintiff had obtained a denial of payment from HCHP. The plaintiff submitted the outstanding balance to HCHP, which denied payment because the physician in question was not an authorized provider under HCHP. The plaintiff resubmitted the $785 claim to the defendant which again refused payment.

The plaintiff filed a complaint against the defendant in the Boston Municipal Court. Both parties filed motions for summary judgment, and a judge in that court granted the defendant's motion and denied the plaintiff's motion. The Appellate Division of the Boston Municipal Court entered an order dismissing the appeal, and the plaintiff appealed. We transferred the appeal here on our own motion and now affirm the order of the Appellate Division.

The dispute centers on the meaning to be given to the last paragraph of G. L. c. 90, § 34A, which was added to the statute by St. 1988, c. 273, § 16. That paragraph reads in full as follows:

> "Notwithstanding the foregoing, personal injury protection provisions shall not provide for payment of more than two thousand dollars of expenses incurred within two years from the date of accident for medical, surgical, X-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services if, and to the extent that, such expenses have been or will be compensated, paid or indemnified pursuant to any policy of health, sickness or disability insurance or

any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the cost of medical, hospital, dental or other health care services. No policy of health, sickness or disability insurance and no contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the cost of medical, hospital, dental or other health care services, shall deny coverage for said expenses because of the existence of personal injury protection benefits. Notwithstanding the provisions of section seventy A of chapter one hundred and eleven of the General Laws, no entity which is the source of the provision, payment or reimbursement of said expenses shall recover any amount against the claimant nor shall it be subrogated to the rights of the claimant for more than two thousand dollars of personal injury protection benefits, nor shall it have a lien against the claimant's personal injury protection benefits on account of its provision payment of reimbursement of said expenses. Within two years from the date of the accident, if the claimant has a policy of insurance which provides health benefits or income disability coverage, and the claimant is unwilling or unable to pay the costs of renewing or continuing that policy of insurance in force, the insurer providing personal injury protection coverage to the claimant may tender to the claimant the cost of maintaining the said policy in force for the two year period. Upon receipt of such tender, the claimant shall continue such policy of insurance; or an equivalent policy in force for the two year period. Nothing in this subsection shall be construed to compel a claimant to renew or maintain any policy of insurance in force prior to receipt of the said tender, or to interfere in any way with the claimant's choice of physician or course of medical treatment."

We said in *Creswell* v. *Medical W. Community Health Plan, Inc.*, 419 Mass. 327, 330 (1995), with reference to the first three sentences of the provision, that "the automobile insurer would only be responsible for the first $2,000 of medical-related expenses, after which the injured party's health insurer, if any, would cover the expenses. Additional medical-related expenses not covered by the health insurer would be paid by the PIP carrier up to $8,000." The plaintiff maintains that the last sentence

of the paragraph affirms his right to receive PIP benefits to pay for medical treatment rendered by any provider he chooses because of the language disclaiming that anything "in this subsection shall be construed . . . to interfere in any way with [a] claimant's choice of physician or course of medical treatment."

In interpreting the last paragraph of § 34A, we apply the principle that "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 513 (1975), quoting *Industrial Fin. Corp.* v. *State Tax Comm'n,* 367 Mass. 350, 364 (1975). Accepted principles of statutory construction also require that the last paragraph of § 34A be read with reference to the whole act of which it is a part.

The comprehensive scheme for compulsory motor vehicle liability insurance contained in G. L. c. 90, §§ 34A-34Q, was enacted not only to provide an inexpensive and uncomplicated procedure for obtaining compensation for injuries sustained in automobile accidents, but also to control costs of compulsory automobile insurance. See *Flanagan* v. *Liberty Mut. Ins. Co.,* 383 Mass. 195, 198 (1981); *Chipman* v. *Massachusetts Bay Transp. Auth.,* 366 Mass. 253, 255 n.3 (1974). Section 34A, by its terms, expresses a legislative recognition that available health insurance reduces the cost of motor vehicle insurance by eliminating the need for additional PIP coverage, and codifies a legislative mandate that claimants utilize existing health insurance for medical expenses which exceed the $2,000 limit on an automobile insurer's PIP liability.

With these goals and mandates in mind, the last paragraph of § 34A addresses two subjects. The first subject is covered by the first three sentences of the paragraph which in explicit terms limit the automobile insurer's obligation to pay PIP benefits to an amount of $2,000 (rather than $8,000) in circumstances where medical and other enumerated expenses "have been or will be compensated" by described types of health insurance. These sentences also contain mandates concerning the ability of health insurers providing the described coverages to coordinate

benefits with PIP coverage and to subrogate against claimants and others.

The second subject dealt with by the paragraph is set out in the last three sentences which relate to a PIP insurer's option to finance continuance or renewal of health or disability insurance which a claimant might otherwise allow to lapse because of the claimant's inability or unwillingness to pay for the coverage. It is in connection with this subject that the last sentence states its limitation.

While the last paragraph of § 34A is not textually divided into subsections, a logical reading of the paragraph establishes that the limitation is confined solely to the second subject. There is some indication in the legislative history of the paragraph that this was meant to be the case.[1] To read the limitation differently would confer on a claimant who is otherwise entitled to benefits under a health insurance plan the ability to shift all of his medical expenses between $2,000 and $8,000 to the PIP carrier, thereby frustrating the goal of containing the costs of automobile insurance. Additionally, a claimant's decision to ignore his existing health insurance could have the same effect as a denial of coverage by the health insurer because of the existence of PIP benefits or as the assertion of a subrogation claim against the PIP claimant by the health insurer for medical expenses beyond $2,000 — both of which are specifically prohibited to health insurers by the express language of the second and third sentences of the last paragraph of § 34A. See *Creswell, supra* at 330-331. Thus, if a claimant can ignore his existing health insurance, he would possess the power to undermine the purposes of the no-fault statute as a whole, and § 34A in particular, and to achieve a result forbidden to his health insurer by the last paragraph of § 34A.

Limiting the term "subsection" to the second subject also reconciles differing interests. A claimant may, for any number of reasons, be either unwilling or unable to continue or renew a health insurance plan, and he should not be compelled to do so

---

[1]Statute 1988, c. 273, § 16, which amended G. L. c. 90, § 34A, to add the last paragraph, began as § 5 of 1988 House Doc. No. 5417, which included the word "subsection." The word was retained in a redraft, 1988 House Doc. No. 5796, § 10. The next redraft, 1988 House Doc. 5858, § 12, replaced the word "subsection" with the broader term "paragraph." All subsequent drafts (1988 House Doc. No. 6240, and 1988 Senate Doc. Nos. 1806, 1850, 1889, and 1890) dropped the word "paragraph" and replaced it with the word "subsection," and the provision was enacted in that form.

for the benefit of the PIP carrier until that insurer tenders payment for continuance or renewal of the expiring coverage or payment for equivalent coverage. At the same time, the PIP carrier tendering payment should be relieved from the concern that it could be sued by the claimant or by a health care provider on the basis that, by making the tender, it is interfering with the claimant's choice of physician or course of medical treatment. The last sentence ameliorates these concerns, and in particular removes the threat of suit against the PIP carrier by declaring that, in making a tender, the carrier is not improperly interfering with the claimant's right to health care of his choice. A claimant is free to disregard the PIP carrier's tender to continue or renew coverage, but, if a claimant does, he, not the PIP carrier, must pay the medical expenses over $2,000 that follow from his choice. We therefore decline to read the last sentence of the paragraph in a way that skews the predominate purpose of § 34A (requiring the coordination of benefits) by imposing an interpretation that essentially renders existing health insurance superfluous.[2]

In reaching the conclusions expressed above, we have considered and rejected the arguments made by the plaintiff for a broader interpretation.

(a) There is nothing in the language of the standard policy that calls for a different result.

(b) The two opinion letters from attorneys in the division of insurance relied on by the plaintiff to support his position are not persuasive. One letter cannot reasonably be construed as expressing an opinion favorable to him. The other opinion expressly notes that the contrary position of the PIP carrier

[2]The dissent states that "the clear language of [§ 34A] . . . does not impose a duty on the injured party to coordinate PIP benefits." *Post* at 118. Section 34A has no such clear direction, but, as we have explained, the most logical reading of § 34A, considered as a whole, leads to the conclusion that a PIP claimant cannot do what the plaintiff attempted to do in this case. The dissent goes on to state that § 34A "only limits recovery of PIP benefits where 'such expenses have been or will be compensated, paid or indemnified pursuant to any policy of health, sickness or disability insurance,' " and from this language draws the conclusion that § 34A "does not limit a PIP insurer's duty to pay because an injured party has health insurance, which, for some reason, does not pay for medical expenses." *Post* at 119. This ipse dixit begs the entire question before us. The result we reach comports with legislative intent and with our indications in *Creswell* v. *Medical W. Community Health Plan, Inc.*, 419 Mass. 327, 330 (1995), that, in this type of PIP situation, a claimant's health insurer must cover medical-related expenses over $2,000.

involved had not been considered by the courts. A decision of the division of insurance, which has been brought to our attention, flatly rejects the plaintiff's position. This is an area where the courts must exercise their duty to construe an unclear statute in accordance with applicable norms of statutory construction without regard to conflicting interpretations within the supervisory agency.

(c) There is no merit to the plaintiff's argument that the construction we adopt causes an equal protection problem. The last paragraph of § 34A has a justifiable and rational basis for distinguishing between a claimant like the plaintiff who has health insurance coverage, and a claimant who lacks health insurance, in support of the legitimate purposes of coordinating insurance benefits so that costs of automobile insurance may be reduced. See *Creswell, supra* at 329; *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 347 (1978); *Pinnick* v. *Cleary*, 360 Mass. 1, 28-30 (1971). In seeking payment from the defendant for his medical expenses above $2,000, the plaintiff was obligated to cooperate and deal in good faith with both HCHP and the defendant, *Sorensen* v. *Sorensen*, 369 Mass. 350, 364 (1975), to comply with the provisions of both insurance policies, and to act in keeping with the applicable law. Having failed to satisfy these obligations, the plaintiff was not entitled to recover from the defendant. The order of the Appellate Division that the appeal be dismissed is affirmed.

*So ordered.*

IRELAND, J. (dissenting, with whom Lynch, J., joins). I disagree with the court's interpretation of G. L. c. 90, § 34A, and its conclusion that policyholders must coordinate benefits due to them from their personal injury protection (PIP) benefits and health insurers. No such limitation is imposed by either the statute or the standard automobile policy, nor does the legislative history reflect such a philosophy.

Our interpretation of G. L. c. 90, § 34A, should be guided by the clear language of the statute, which does not impose a duty on the injured party to coordinate PIP benefits. See *Massachusetts Bay Transp. Auth.* v. *Massachusetts Bay Transp. Auth. Retirement Bd.*, 397 Mass. 734, 738 (1986), and cases cited ("Where the language of a statute is plain, there is no

room for speculation as to its meaning"). The statute only limits recovery of PIP benefits where "such expenses have been or will be compensated, paid or indemnified pursuant to any policy of health, sickness or disability insurance." G. L. c. 90, § 34A. It does not limit a PIP insurer's duty to pay because an injured party has health insurance, which, for some reason, does not pay for medical expenses. The defendant was unable, either in its brief or at oral argument, to point to specific language in G. L. c. 90 to support its contention that the injured party has a duty to coordinate benefits.

The statute as written makes the automobile insurer primarily responsible for reasonable medical expenses up to $8,000, unless expenses between $2,000 and $8,000 have been paid by the injured party's health insurer. Today's decision holds otherwise, and forces policyholders to choose among courses of treatment and among medical providers, something specifically prohibited by G. L. c. 90, § 34A.

Today's decision ignores the lack of notice provided to policyholders by either the statute or the standard automobile policy. As discussed above, the clear language of the statute does not impose a duty on an injured party to coordinate PIP benefits for expenses in excess of $2,000. In addition, the PIP part of the standard automobile policy does not describe a duty to coordinate coverage, nor does it mention a requirement to seek coverage first from a health insurer. Instead, it declares that the PIP provider will pay up to $8,000 for each person injured in an accident: "For any one accident, we will pay as many people as are injured, but the most we will pay for injuries to any one person is $8,000. This is the most we will pay no matter how many autos or premiums are shown in the Coverage Selections Page." The policy sets out thorough coverage of medical expenses, including "all reasonable expenses incurred as a result of the accident for necessary medical, surgical, X-ray and dental services." Expecting policyholders to be aware of a duty to coordinate benefits without any notice from the terms of their policy is unreasonable and unrealistic.

The court's decision is inconsistent with the broader policy behind PIP, which is designed to "provide a prompt, inexpensive means of reimbursing claimants for out-of-pocket expenses" regardless of their ability to pay or their choice of a health insurer. *Flanagan* v. *Liberty Mut. Ins. Co.*, 383 Mass. 195, 198 (1981). The decision also contradicts the policy behind the 1988

amendments. See St. 1988, c. 273, §§ 11-16. As we stated in *Creswell* v. *Medical W. Community Health Plan, Inc.*, 419 Mass. 327 (1995), a PIP carrier must pay reasonable medical expenses not covered by a health insurer up to $8,000. The policyholder contracts with the insurer for this, and it is mandated by the minimum standard policy guidelines of the Commonwealth. The amendment was intended to stop insured parties from receiving double recoveries, not to complicate the injured party's ability to obtain payment for medical-related expenses. See *id.* at 329-330.

The practical effect of G. L. c. 90, § 34A, on policyholders also weighs against the court's conclusion. Today's holding forces injured parties with health insurance to seek treatment initially and exclusively from their health insurer because otherwise they must change treating physicians as soon as the cost of treatment exceeds $2,000. This fails to guarantee to injured parties a choice of medical treatment, and, therefore, contradicts G. L. c. 90, § 34A.

Finally, and most regrettably, this decision works an injustice on the plaintiff and other injured parties with disputed claims pending. PIP providers may now deny these claims. Given the absence of notice to policyholders to date, we should not permit our decision to deny coverage of benefits to policyholders for injuries already suffered and for medical treatment already received. Only a prospective application of this decision will avoid this result. Further, PIP providers should be required to provide complete and thorough notice to policyholders from this point forward as a prerequisite to denying future claims. Injured parties should not bear the burden of shortcomings in the language of G. L. c. 90, § 34A, and the standard automobile policy.