Merrick, P.J.
This is a G.Lc. 90, §34M action by a medical provider to recover Personal Injury Protection (“PIP”) benefits from his patient’s automobile insurance carrier for tiie difference between the amount he billed for his services and the amount of the health insurance payments he received pursuant to his “participating provider” agreement with his patienf s health insurer. After trial, judgment was entered for the defendant, and the plaintiff filed this Dist/Mun. Cts. R. A. D. A., Rule 8C, appeal.
Rafael Santiago (“Santiago”) suffered injuries in an automobile accident while a passenger in a vehicle insured by defendant Liberty Mutual Insurance Company (“Liberty”). He was also covered under a health insurance policy issued by Blue Cross and Blue Shield (“BCBS”). Santiago was treated by several medical providers, and Liberty paid the initial $2,000.00 of the expenses he incurred. Thereafter, Santiago was treated by plaintiff Dipti Shah (“Shah”), a physical therapist, who submitted her bills directly to BCBS for payment. Shah has a contract with BCBS as a participating provider in which she agreed to accept specified amounts for designated services. Under the contract, Shah is prohibited from “balance billing” the insured for larger amounts, but remains free to seek additional payment from third parties, including other insurers. The bills Shah submitted to BCBS included charges which exceeded the amounts specified in her BCBS contract. BCBS paid Shah at the provider contract rates in an amount less than the total she had charged for her services.
Shah commenced this action to recover from Liberty, the PIP carrier, the balance of her bills in excess of her contract rates with BCBS. She now claims on this appeal to be aggrieved by the trial judge’s denial of the following requests for rulings:
3. When a medical provider is a ‘participating provider’ in the PIP claimant’s health insurance plan and such medical provider submits her bills to the claimant’s health insurance plan after the PIP carrier has paid the initial $2,000.00 PIP medical benefit, and the health insurance carrier pays such provider’s bills in part, the PIP carrier is obliged to pay the actual remaining balance of such provider’s bill from the remaining $6,000.00 on the claimant’s PIP policy.[1]
4. Where the PIP carrier has not notified the claimant in writing that it contests medical expenses as unreasonable or treatment as unnecessary, and where the claimant has complied with his health plan’s terms and conditions, and where the health carrier has paid the claimant’s medical pro *211 vider’s bills in part based upon the health plan’s contractual provisions, the PIP carrier is obliged to pay the actual remaining balance of such provider’s bill from the remaining $6,000.00 on the claimant’s PIP policy.
1. We note at the outset that a PIP insurer’s responsibility under G.L.c. 90, §34M is not to pay “the actual remaining balance of [a] provider’s bill,” as asserted in the requested rulings, but only the “reasonable expenses ... for necessary medical... services.” Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 64-65 (1999). As many §34M cases make plain, those two figures are not always the same. The requested rulings of law were properly denied on that ground alone.
2. The parties have also briefed and argued the issue of whether a medical provider, who has contracted with a health insurer to provide services for a certain fee and not to “balance bill” the patient, may attempt to claim a larger amount from a PIP carrier. A health care provider who is an “unpaid party shall be deemed a party to a contract with the insurer responsible for payment and shall therefore have a right to commence an action in contract for payment.” G.L.c. 90, §34M. While claiming benefits as a party to the contract under the PIP statute, the provider is, of course, subject to the provisions of that statute. The purposes of the statute have been stated by the Supreme Judicial Court.
The comprehensive scheme for compulsory motor vehicle liability insurance contained in G.L.c. 90, §§34A-34Q was enacted not only to provide an inexpensive and uncomplicated procedure for obtaining compensation for injuries sustained in automobile accidents, but also to control costs of compulsory automobile insurance. ... Section 34A, by its terms, expresses a legislative recognition that available health insurance reduces the cost of motor vehicle insurance by eliminating the need for additional PIP coverage, and codifies a legislative mandate that claimants utilize existing health insurance for medical expenses which exceed the $2,000 limit on an automobile insurer’s PIP liability.
Dominguez v. Liberty Mut. Ins. Co., 429 Mass. 112, 115 (1999). See also Im v. Metropolitan Prop. & Liab. Ins. Co., 1994 Mass. App. Div. 113, 114. None of those purposes are served by permitting a provider, who is barred by contract from collecting more than agreed from either the health insurer or the patient, to collect additional sums from the PIP carrier. We have previously held that, where the PIP insurer has obtained a release from a provider for a lesser sum than that originally billed, the insured is not an “unpaid party” within the meaning of §34M. Ny v. Metropolitan Prop. & Cas. Ins. Co., 1998 Mass. App. Div. 179, 181-182. It follows that a provider who has agreed to accept a specified amount for services may not be said to be an “unpaid party” once he is paid that sum. Assuming for the sake of discussion that the judge found that the “reasonable expenses... for necessary medical... services” exceeded the amount paid by the health insurer (and there is no indication that was the case), a lesser amount was paid only because of Shah’s own actions in so contracting with BCBS. Shah, as a party to the policy for purposes of this action, may not, any more than the insured, contract or take any other action to frustrate the statutory scheme. Dominguez v. Liberty Mut. Ins. Co., supra at 118; Im v. Metropolitan Prop. & Liab. Ins. Co., supra at 114.
3. Shah also contends that Liberty may not rely on the price she agreed to with BCBS because of G.L.c. 176D, §3(4), which provides:
The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance: ...
(4) ... [A]ny ... insurance company ... establishing the price to be paid to any health care facility or provider at a level equal to the lowest price paid to such facility or provider under a contract with any other nonprofit *212 hospital service corporation, medical service corporation, insurance company, health maintenance organization or government payor.
That statute must be construed, where possible, as consistent with the purposes and provisions of the PIP statutory scheme. Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371, 378 (1998); Nercessian v. Board of Appeals on M.V. Liab. Policies & Bonds, 46 Mass. App. Ct. 766, 770-771 (1999). Toward that end, §3(4) may be reasonably interpreted as applying only to health insurers and not PIP carriers, for the policy reasons discussed above. Such an interpretation of §3(4) would also be consistent with the Court’s analysis in Dominguez which would preclude any construction of §3 (4) that permitted BCBS and Shah to contract so as to shift the cost of medical expenses from the health insurer to the PIP carrier, “thereby frustrating the [Legislative] goal of containing the costs of automobile insurance.” Dominguez v. Liberty Mut. Ins. Co., supra at 116.
Judgment affirmed.
So ordered.

 The version of the request set forth in the plaintiffs brief inserts after the words “in part” the phrase “based upon the plan’s established provider reimbursement rates.” That language was not in the request submitted to the judge. (App. 204).