Forde, J.
When Eric Thevenin was injured in an automobile accident on December 9,1996, he was covered by liberty Mutual Insurance Company under a polity of insurance which included, in addition to the usual compulsory coverage, Medical Payments (MedPay) coverage of $5,000.00. His health insurer at the time was Harvard Community Health Plan (HCHP). After the accident, Mr. Thevenin incurred medical bills in the amount of $6,109.40. liberty Mutual made Personal Injury Protection (PIP) payments in the amount of $2,528.50, sent him for an independent medical examination (IME), and, without notifying him of the results, refused thereafter to pay for any additional treatment
The bills for which Liberty Mutual declined to make payment included those of an orthopedist, an MKI ordered by that physician, and the cost of treatment by a physical therapist to whom the orthopedic surgeon had referred the insured. The plaintiff had not submitted these bills to Harvard Community Health Plan. In addition, Mr. Thevenin was treated by a chiropractor. Those bills, which he submitted to Harvard Community Health Plan, were rejected on the ground that the HCHP does not cover such services under their contract
At trial, the plaintiff prevailed on his claim for coverage. Liberty Mutual was ordered to pay $557.00 under the PIP provisions of the policy. This award is not appealed. The Court found the remaining costs of treatment $3,023.90, not to be payable under the PIP provisions of the contract because the “plaintiff did not seek to have these expenses paid by his health insurance.” See Dominguez v. Liberty Mutual Ins. Co., 429 Mass. 112 (1999). The Court awarded this amount to the plaintiff under the MedPay provisions of the contract of insurance, and attorneys’ fees in the amount of $3,072.00.
The defendant has appealed the award related to the MedPay provisions of the contract and the award of attorneys’ fees. The primary issue on appeal is whether *166 the optional Medical Payments provision of the plaintiffs contract with Liberty Mutual may be conscripted to pay for medical treatment when the payment for that treatment was properly denied under the PIP provisions of the contract
Discussion
MedPay is optional insurance coverage purchased at an additional cost to the insured. The insured is notified, in the “Optional Insurance” provisions of his contract, that MedPay covers “reasonable expenses necessary for medical and funeral services incurred as a result of an accident”[1] However, although the defendant argues otherwise, when the optional MedPay insurance comes into play is far from clear from any cursory or inexperienced review of the policy itself.
Essential to the analysis of the coverage issue in this case is the fact that the bills in question were rejected by the defendant pursuant to the PIP provisions of his insurance policy — not because they were not compensable under those provisions, but because the plaintiff failed to follow the statutory requirement that he coordinate his benefits with the various insurers. This finding is set forth in the decision of the trial judge.
It is now settled law that under the Massachusetts no fault statute, Mass. Gen. Laws ch. 90, Section 34, “the automobile insurer would only be responsible for the first $2,000 of medical related expenses, after which the injured parly’s health insurer, if any, would cover the expenses. Additional medical-related expenses not covered by the health insurer would be paid by the PIP carrier up to $8,000.” Dominguez v. Liberty Mut. Ins. Co., 429 Mass. 112, 114 (1999), citing Creswell v. Medical W. Community Health Plan, Inc., 419 Mass. 327 (1995). The Dominguez decision places squarely on the insured individual the responsibility to coordinate treatment with health providers and insurers. It also confirms the coordination of benefits as “the predominant purpose of [Mass. Gen. Laws, ch. 90] Section 34A.” Dominguez, at 117.
Dominguez did not make new law. It merely clarified for many the obligations of the parties to any Massachusetts no-fault insurance contract Per Dominguez, the failure to coordinate medical treatment permits the unfortunate and unpleasant result of the denial of PIP coverage beyond the initial $2,000 statutory benchmark. The insured’s ignoring his health insurance and relying on PIP to cover all of the costs of treatment is viewed by the SJC as undermining the purposes of the no-fault statute. Dominguez at 116.
The defendant argues that until PIP coverage is exhausted, optional insurance coverage paid for by the plaintiff is not available to him. The policy at issue here goes into great detail regarding all of the circumstances under which it will not provide optional coverage. Among the things for which the policy declines payment is any benefit that may be obtainable under the compulsory provisions of the contract[2] Within the compulsory provisions of the policy the plaintiff is notified as follows: “If anyone is entitled to PIP benefits and also to benefits under another Part of this policy, we will pay from this Part (Compulsory PIP Insurance) first”[3]
The plaintiff posits — a position that is not totally unwarranted — that under these circumstances MedPay “would essentially be sham coverage.” To the uninitiated or unwary — based perhaps on his having neglected to diligently and carefully scrutinize all thirty-three pages of the contract, in which many such *167 important notices appear in unnumbered paragraphs — this may seem to be the case.
The decision of the trial cotut in the instant case was in conformance with the opinion of the Commission of Insurance on the issue of when MedPay coverage should begin. In Massachusetts Insurance Bulletin B-90-02 (published September, 1990) the Commissioner of Insurance opined that
[w]here there is health insurance coverage available, ... medical expenses over $2,000 are not payable under PIP, so MedPay begins to provide coverage at that point...
The problems with this interpretation are, however, at least twofold. PIP coverage does not end after the payment of the first $2,000. PIP coverage extends beyond that amount to cover — up to $8,000 — either all medical expenses where no health insurance is available, or, any medical expenses in excess of the initial $2,000 which are not covered by the injured parties’ health insurance. As Bulletin B-90-02 itself states, MedPay applies ordy after PIP benefits for medical expenses have been exhausted. PIP benefits are exhausted only after the claimant has met the statutory requirement of coordinating his benefits — submitting the bills over $2,000 to the health insurer first and allowing the PIP coverage to pick up the unpaid balance.
As noted earlier, the contract of insurance contains no direct explication concerning when the MedPay provisions become effective. It does, however, provide that the optional insurance coverage sold to the plaintiff does not allow for medical payments which “are payable, or would have been payable” under the PIP provisions of the policy. See Footnote 2, supra. The contract language, which is far from a model of clarity on this point, requires us to determine that MedPay provides, not an alternative, but a supplemental source of payments above and beyond the $8,000 upper limit established by the no-fault statute. To permit the plaintiff to substitute one for the other, therefore, would be inappropriate given the legislative intent of the Massachusetts no-fault statute, and the prohibitions contained in the contract between the parties.
We are not persuaded that the optional insurance purchased by the plaintiff may be treated any differently than his PIP coverage in terms of the exhaustion of health and PIP benefits before calling on the optional insurance coverage for payment of the remaining bills. Because the medical bills in question would have been payable under the PIP provisions of the policy, the plaintiff’s failure to properly coordinate the benefits with each of his insurers requires a finding that it was error to require the defendant to pay these bills. The award of $3,023.00 to the plaintiff is, accordingly, reversed.
Attorneys’ Fees
The defendant seeks to have the award of attorneys’ fees in this case substantially reduced because the plaintiff’s medical payments award has been reduced. We decline to reduce the award in this case for several reasons.
The plaintiff has recovered a judgment which, though smaller than expected, entitles him to reasonable attorneys’ fees. The reversal of the award relating to the remaining portion of the medical bills does not require reversal or reduction of the award of attorneys’ fees. The plaintiff’s Mure to comply with the legislative mandate to coordinate his benefits preceded the authoritative decision in the Dominguez case. At that time, even the Commissioner of Insurance had been led to believe that the legislature intended PIP and MedPay to operate simultaneously to cover costs of medical treatment over and above the first $2,000. The appeal of the award under the MedPay portion of the policy, though unsuccessful, was not frivolous. Moreover, the lack of contractual clarity surrounding the crucial issue in *168 this case has provided sound justification for the entire litigation. No additional attorneys’ fees will be awarded on the appeal. However, the trial courfs award of $3,072.00 in attorneys’ fees is affirmed.

 Policy at 15, Part 6.

 Policy at 15, Part 6 (Medical Payments), unnumbered para. 1 “We will not pay under this Part for any expenses that are payable... under the PIP coverage of this policy or any other Massachusetts auto policy.”

 Policy at 7, Part 2 (PIP), unnumbered para. 2.