MELISSA MEJIA & another[1] vs. AMERICAN CASUALTY
COMPANY.

No. 99-P-2043.

Essex. January 14, 2002. - July 18, 2002.

Present: BROWN, KASS, & KANTROWITZ, JJ.

*Insurance,* Motor vehicle personal injury protection benefits, Medical
supplementary coverage. *Motor Vehicle,* Insurance.

Under the terms of an automobile insurance policy, the plaintiffs, who were
injured in an accident involving a vehicle which the defendant insured,
were required to submit certain excess medical bills to their health insur-
ance providers, rather than bypassing them and making a claim initially
and directly to the defendant under an optional medical payment section of
the policy; if the health insurers declined to pay such bills, the plaintiffs
were entitled to be reimbursed under the optional medical payment section
of the policy if such expenses were not payable under the personal injury
protection provision of the policy. [464-466]

CIVIL ACTION commenced in the Superior Court Department on
May 13, 1997.

The case was heard by *Joseph A. Grasso, Jr.,* J., on motions
for summary judgment.

*Peter A. Callahan* for the plaintiffs.

*John P. Graceffa* for the defendant.

KANTROWITZ, J. The plaintiffs, Melissa Mejia and Niurka San-
tana, appeal from a Superior Court judge's grant of summary
judgment in favor of the defendant, American Casualty
Company (American). Mejia and Santana, who were injured in
an automobile accident, each submitted and were reimbursed
for the first $2,000 of their medical bills by American under the
compulsory personal injury protection (PIP) benefits section of
a standard Massachusetts automobile policy issued by American

[1] Niurka Santana.

to Mejia's mother. Thereafter, Mejia and Santana submitted additional medical bills to American for payment under the optional medical payments (MEDPAY) part of the policy. American informed them that they were required to submit these bills to their health insurers and that further coverage under the automobile policy would only be considered for payment by American if and when the health insurers did not pay their bills.

At issue on appeal is whether the motion judge was correct in ruling that the plaintiffs were required to submit their additional medical bills first to their health insurance providers, rather than bypassing them and making a claim initially and directly to the motor vehicle insurer under the MEDPAY section. We conclude that, under the terms of the policy, the plaintiffs were first required to submit their bills to their health insurers, but if the health insurers declined to pay them, the plaintiffs were then entitled to be reimbursed under the MEDPAY coverage of American's policy if these expenses were not payable under PIP.

*Background.* On November 11, 1995, the plaintiffs were injured in an automobile accident in Woburn. Mejia was driving at the time of the accident and Santana was a passenger. The vehicle was registered to Mejia's mother, Sylvia Mejia, and was insured by the defendant, American. Coverage under the policy included part 2, PIP, with a maximum amount of $8,000 per claimant and part 6, MEDPAY, in the amount of $5,000 per claimant. Both plaintiffs had private health insurance coverage in effect at the time of the accident.

From approximately November 28, 1995, through November, 1996, the plaintiffs submitted applications for PIP benefits to American. Mejia's medical bills and lost wages arising out of the accident came to $6,504, and Santana's came to $2,777.30. American made PIP payments for medical expenses totaling $2,000 to Mejia and $2,208 to Santana.[2] American also made further payments from the PIP coverage to Mejia and Santana

[2]Under the Compulsory Motor Vehicle Liability Insurance scheme of G. L. c. 90, § 34A, and part 2 of the automobile insurance policy, the first $2,000 of accident-related medical bills are covered by the automobile insurer under PIP; medical bills from $2,000 to $8,000 are also payable under PIP if the

for medical payments submitted to and denied by their private health insurance providers.[3]

On January 7, 1997, American received a demand letter from the plaintiffs pursuant to G. L. c. 93A, c. 176D, and c. 90, § 34M, requesting that American pay further accident-related medical bills under the MEDPAY provision of the policy.[4] The plaintiffs had not submitted these bills to their private health insurance providers prior to submitting them to American. American responded on January 30, 1997, by requesting documentation that these bills had been first submitted to, and denied by, the plaintiffs' private health insurance providers. American also advised the plaintiffs' counsel that, to the extent coverage for these bills was not provided by the health insurers, they would be considered for payment under the PIP coverage section of the policy.[5] When the plaintiffs did not provide the requested documentation, American denied payment, stating that its obligation to pay medical bills in excess of $2,000 was governed by the PIP (not MEDPAY) provision of the policy,

injured party does not have private health insurance. The policy also provides in part 2 that, if there is health insurance, the insurer "will also pay medical expenses in excess of $2,000 for such injured person which will not be paid by a medical expense provider." *Dominguez* v. *Liberty Mut. Ins. Co.*, 429 Mass. 112, 112-113 (1999), held that an automobile insurer is not required to pay for medical expenses between $2,000 and $8,000 as PIP benefits if the claimant's health insurer would have covered the medical services had the claimant sought treatment in accordance with his health insurer's plan.

At oral argument, American's attorney explained that the amount paid to Santana exceeded $2,000 because the final bill submitted before the initial PIP amount was exhausted put the total over the $2,000 limit. American, however, paid the bill in its entirety.

[3]These additional PIP payments were made before the Supreme Judicial Court's decision in *Dominguez* v. *Liberty Mut. Ins. Co.*, 429 Mass. 112 (1999) (see note 2, *supra*). The record does not reveal why the plaintiffs' health insurers denied their claims. It may be that the plaintiffs used an unauthorized provider or it may be that they obtained services unavailable under their health insurance. After the *Dominguez* case, the PIP carrier would only have been required to pay in the latter circumstance.

[4]The reason the plaintiffs wanted MEDPAY rather than their health insurance provider to pay the bills was to avoid the imposition of a lien by the health insurer on any recovery which they might obtain from third parties.

[5]See note 2, *supra.*

We do not know whether the plaintiffs' additional medical expenses would have qualified for additional PIP coverage under the *Dominguez* test. *Dominguez* v. *Liberty Mut. Ins. Co.*, 429 Mass. 112, 115-117 (1999).

requiring a denial of benefits from the health insurance providers prior to payment.

On May 13, 1997, the plaintiffs filed a complaint in Superior Court seeking a declaration pursuant to G. L. c. 231A that American was responsible for all of the plaintiffs' outstanding medical expenses in excess of $2,000 under the MEDPAY provision of the policy and that the plaintiffs need not submit those claims to their health insurance providers first. The complaint alleged that American's refusal to pay was a breach of contract and in violation of G. L. c. 93A, c. 176D, and c. 90, § 34M. The plaintiffs also claimed reasonable attorney's fees and costs and expenses of litigation. On July 1, 1997, American filed a counterclaim seeking a declaratory judgment that the plaintiffs were not entitled to the requested payment.

The plaintiffs moved for partial summary judgment on their claims for declaratory relief, breach of contract, and breach of G. L. c. 90, § 34M. American opposed the plaintiffs' motion and moved for summary judgment on its counterclaim. After hearing the cross motions, the judge granted summary judgment in favor of American and against the plaintiffs, who appealed.

*Discussion.* Summary judgment is appropriate where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as matter of law. See *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). Here, both parties agreed that there were no genuine issues of material fact, and both argued that they were entitled to judgment as matter of law. We begin our analysis by interpreting the language of the insurance contract. See *Freelander* v. *G. & K. Realty Corp.*, 357 Mass. 512, 516 (1970).

Part 2 of the policy at issue, "Personal Injury Protection" (PIP), provides for payment of medical expenses, lost wages, and replacement services and states in pertinent part:

> "Some people have a policy of *health*, sickness, or disability *insurance* or a contract or agreement with a group, organization, partnership or corporation to provide, pay for, or reimburse the cost of medical expenses. *If so, we will pay up to $2,000 of medical expenses for any injured*

*person. We will also pay medical expenses in excess of $2,000 for such injured person which will not be paid by a medical expense provider.* In either case, our total payment for medical expenses, lost wages and replacement services will not exceed $8,000.

"...

*"If anyone is entitled to PIP benefits and also to benefits under another Part of this policy, we will pay from this Part first."* (Emphases supplied.)

Part 6 of the policy, "Medical Payments" (MEDPAY), states in pertinent part:

"Under this Part, we will pay reasonable expenses for necessary medical and funeral services incurred as a result of an accident.

"We will pay for expenses resulting from bodily injuries to anyone occupying your auto at the time of the accident [emphasis omitted]. . . .

"...

*"We will not pay under this Part for any expenses that are payable* or would have been payable except for a deductible *under the PIP coverage of this policy* or any other Massachusetts auto policy" (emphases supplied).

When the words of the contract are not ambiguous, the contract will be enforced according to its terms. *Schwanbeck* v. *Federal-Mogul Corp.,* 412 Mass. 703, 706 (1992), citing *Freelander* v. *G. & K. Realty Corp.,* 357 Mass. at 516. Interpretation of an insurance policy is a question of law to be determined by the court. *Massachusetts Bay Transp. Authy.* v. *Allianz Ins. Co.,* 413 Mass. 473, 476 (1992), citing *Nelson* v. *Cambridge Mut. Fire Ins. Co.,* 30 Mass. App. Ct. 671, 673 (1991).

Taken in isolation, the first and second sentences of part 6, quoted above, express an unconditional obligation to reimburse medical expenses; it is necessary, however, to read the contract as a whole. See *USM Corp.* v. *Arthur D. Little Sys., Inc.,* 28 Mass. App. Ct. 108, 116 (1989). In so reading the policy, it is

evident that when PIP coverage is available, payment under PIP is to precede any payments under MEDPAY. The availability of PIP in turn depends upon whether the claimant has health insurance for the medical service which was provided.

Thus, in the matter at hand, after they had each received $2,000 of PIP benefits for medical expenses, the plaintiffs were required to send their bills for additional medical expenses to their health insurers. If the health insurers refused coverage, the plaintiffs were then required to send the bills to the automobile insurer for consideration under the PIP coverage of the policy. Only if PIP benefits were not payable for these expenses, because, for example, the policyholder had elected to go outside her health plan to obtain a medical service that could have been obtained through her health plan, would MEDPAY come into play. See *Dominguez* v. *Liberty Mut. Ins. Co.*, 429 Mass. 112 (1999).[6] As the plaintiffs failed to submit their claims in this fashion, it was not improper for the defendant to refuse to pay them.[7]

*Judgment affirmed.*

---

[6]We note that, unlike PIP, MEDPAY is an optional coverage, the terms of which are not prescribed by statute. Thus, the coordination of benefits provisions in G. L. c. 90, § 34A, that were construed in the *Dominguez* case do not apply to MEDPAY coverage. MEDPAY provides a meaningful optional benefit for some consumers because it covers treatment which would not otherwise be covered by health insurance or PIP.

[7]In view of our decision, the plaintiffs' claims under G. L. c. 93A, c. 176D, and c. 90, § 34M, and for attorney's fees and costs and expenses of litigation necessarily fail.