Fecteau, J.
This is an action brought by the plaintiff alleging that the defendant breached its policy of insurance with the plaintiff regarding medical expenses claimed payable due from Personal Injury Protection (“PIP”) coverage under her Massachusetts automobile insurance policy, as well as damages under the provisions of G.L.c. 93A and c. 176D for the defendant’s refusal to pay those benefits. The defendant contends that it owes no further payments to or on behalf of the plaintiff due to her failure to comply with a contractual and statutory responsibility, after payment by Commerce of the first $2000.00 in PIP benefits, to submit all medical bills to her health insurer. Additionally, the defendant contends that it is no longer obligated to pay such benefits as they would duplicate payments from the tortfeasor that were ordered as a result of voluntary and binding arbitration.
On November 19,2002, this matter came on for trial before me, sitting without jury, the parties having waived their rights thereto. Upon consideration of the evidence, including extensive agreed statements of fact, the following findings of fact and rulings of law are made.
FINDINGS OF FACT
1. On November 27, 1998, the plaintiff, then insured by the defendant (“Commerce”) under a Massachusetts policy of automobile insurance coverage, 6th edition, was injured as a result of a motor vehicle accident. She was brought by ambulance to the Clinton Hospital and was treated in the emergency room. Thereafter, she sought and received medical treatment from various providers. She was at that time and until August 1, 1999, also insured under a policy of health insurance with the Tufts Health Plan.
2. She notified Commerce of the accident on November 30, 1998 and an application for Personal Injury Protection benefits was sent to the plaintiff on or about December 4, 1998, along with a request for health insurance information. A second application was sent to plaintiffs counsel on or about January 5, 1999. On February 12, and March 12, 1999, Commerce wrote to plaintiff s counsel to request a return of a completed PIP application form.
3. On or about March 22, 1999, the plaintiff sent to Commerce the completed PIP form along with medical bills that totaled $3639.00, and reports from medical providers. She provided to Commerce no information regarding whether the plaintiff was covered by a health insurance policy but on the same date, the plaintiff, through her attorney, submitted the same medical bills to Tufts. On March 30, 1999, the defendant issued payments under PIP coverage which totaled $2000.00, payable to New England Chiropractic, in the amount of $1765.00 and $235.00 to the Town of Colchester for ambulance services.
4. On April 9, 1999, the defendant caused the plaintiff to undergo a physical examination with a medical doctor, a result of which was a letter to the plaintiff through her counsel that Commerce would deem her at a medical end result as of April 22, 1999, thus allegedly ending their liability for PIP benefits. In any event, it had paid up to the limit of the first plateau of benefits and intended to await further information concerning the plaintiffs health insurer and its treatment of the medical bills that remained unpaid.
5. On August 13, 1999, Tufts Health Plan generated and sent to the plaintiff a document called an “itemization of charges received.” This showed medical bills of the plaintiff that had been submitted from Clinton Hospital, Central Mass. Magnetic Imaging and MRI of Worcester. This document was not an explanation of benefits, nor did it address the chiropractic bill sent by the plaintiffs attorney.
6. Commerce did not receive any further information concerning the plaintiffs claim for PIP benefits or about her health insurance until January 20, 2000, at which time she submitted to Commerce medical *511 bills which totaled $6234.87. The defendant thereupon requested the plaintiff to submit an explanation of the action taken by her health insurer on the medical bills sent to Tufts Health Plan. Neither the plaintiff, nor Tufts ever provided to Commerce any confirmation that the bills that the plaintiff complains that it unlawfully refused to pay were ever submitted to Tufts or any explanation as to how Tufts handled any bills submitted. In fact, while the plaintiff had submitted the bill from New England Chiropractic to Tufts, the health insurer had a policy that required the submission of medical bills to be submitted by the provider and not the insured, or her attorney, unless reimbursement was sought. There is no evidence that Tufts acted in any way upon the attorney’s submission of bills for payment, including that of New England Chiropractic.
7. It is uncontroverted that the plaintiffs health insurance coverage provided by Tufts Health Plan excluded payment for spinal manipulation services and would have fully rejected such a claim for payment, had such a claim been presented. Such a rejection would have resulted in the transmission of an “explanation of benefits” form to the insured. Had such a form been sent to the plaintiff, and received by Commerce, the defendant would have been required to pay for such services under the PIP coverage, assuming causal relationship existed, subject to other contract provisions. At no relevant time was Commerce in possession of the plaintiffs health insurance plan with Tufts nor had Tufts ever informed Commerce of the exclusion of chiropractic services from its coverage.
8. Part 2 of the plaintiffs auto policy with the defendant reads, in relevant part, as follows: “(s]ome people have a policy of health, sickness, or disability insurance or a contract or agreement with a group, organization, partnership or corporation to provide, pay for, or reimburse the cost of medical expenses. If so, we will pay up to $2000.00 of medical expenses for any injured person. We will also pay medical expenses in excess of $2000.00 for such injured person which will not be paid by a medical expense provider. In either case, our total payment for medical expenses, lost wages and replacement services will not exceed $8000.00.” At p. 6. Part 2 of the policy also states that: “(w]e will not pay PIP benefits to or for an injured person, to the extent those benefits would duplicate expenses or losses recovered by that person in a court judgment or settlement.” At p. 7.
9. On January 25, 2001, the tort claim between the plaintiff and the adverse motor vehicle operator was submitted to voluntary and binding arbitration, in which the arbitrator found that all of the damages incurred by the plaintiff amounted to $15,900.00, from which $2000.00 was deducted as representing the amount exempted from such an award on account of no-fault, PIP benefits paid. During said arbitration hearing, all of the plaintiff s medical expenses incurred were submitted into evidence on the issue of damages. The arbitration award was general in nature, and it neither delineated among the traditional elements of damages nor were medical expenses, in full or in part, excluded from consideration by the arbitrator on the issue of damages.
DISCUSSION
This case presents two issues concerning whether the failure of the defendant to pay medical expenses under the PIP portion of the plaintiffs motor vehicle insurance policy was justified, namely, (1) whether it was lawful for Commerce to require the plaintiff, as a prerequisite to payment of PIP benefits beyond the initial $2000.00 paid, to submit all unpaid medical expenses to her health insurer, including those that the policy excluded, and for the plaintiff to obtain an explanation of the action taken by the health insurer on those bills, and (2) whether the defendant was within its rights to deny coverage under PIP on the ground that the plaintiff would not be entitled to receive PIP benefits after the arbitration of the tort claim against the tortfeasor to the extent that they would duplicate payments of an award from a tortfeasor.
G.L.c. 90, §34A, states, in relevant part, as follows: “(n]otwithstanding the foregoing, personal injury protection provisions shall not provide for payment of more than two thousand dollars of expenses ... if, and to the extent that, such expenses have been or will be compensated, paid or indemnified pursuant to any policy of health, sickness or disability insurance or any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the cost of medical, hospital, dental or other health care services.” In the recent case of Mejia v. American Casualty Company, 55 Mass.App.Ct. 461 (2002), the court stated, in a case concerning an insurer’s obligation under the “medical payments” coverage of the Massachusetts automobile policy, that “in the matter at hand, after they had each received $2000.00 of PIP benefits for medical expenses, the plaintiffs were required to send their bills for additional medical expenses to their health insurers. If the health insurers refused coverage, the plaintiffs were then required to send the bills to the automobile insurer for consideration under the PIP coverage of the policy... As the plaintiffs failed to submit their claims in this fashion, it was not improper for the defendant to refuse to pay them.” At 466. The court’s view of the of the duty of the PIP carrier, in light of the rejection of claim by the health insurer, is instructive herein: “. . . [t]he record does not reveal why the plaintiffs’ health insurers denied their claims. It may be that the plaintiffs used an unauthorized provider or it may be that they obtained services unavailable under their health insurance. After the Dominguez case, the PIP carrier would only have been required to pay in the *512 latter circumstance.” Fn. 3, at 463. Thus, it is easily inferred that imposition of an obligation upon an insured, after exhaustion of the first $2000.00 in PIP coverage, to submit all additional bills to the health insurer for coverage or rejection is consistent with contractual and statutory duties of the insurer. Here, there is no evidence that the plaintiffs health insurer acted upon the contested bills by either acceptance or rejection. Until that occurs, the PIP carrier is under no obligation to perform any other tasks or responsibility.
Turning to the second issue, it is uncontroverted that the plaintiff recovered an award of tort damages following binding arbitration of her claim against the tortfeasor. The plaintiff introduced all of her medical expenses as evidence. Since the arbitrator made a general award of tort damages with no itemization of the elements of damages found nor exclusion of any medical expenses, in full or part, from the consideration of damages, the award was inclusive of all medical expenses incurred by the plaintiff (deducting therefrom only the $2000.00 in PIP benefits actually paid by Commerce, for which the tortfeasor would be exempt from liability). Moreover, had the defendant paid all of the plaintiffs medical expenses, such expenses would have either been exempted from the award or required to have been repaid to Commerce. G.L.c. 90, §34M, states, in relevant part’ that:
if any person claiming or entitled to benefits under the personal injuiy protection provisions of a policy or bond insuring a vehicle registered in this commonwealth brings, in such a case, an action in tort against the owner or person responsible for the operation of such a vehicle, amounts otherwise due such a person under the provisions of section thiriy-four A shall not become due and payable until a settlement is reached or a final judgment is rendered in such a case and the amounts then due shall be reduced to that extent that damages for expenses and loss otherwise recoverable as a personal injuiy protection benefit are included in any such settlement or judgment.
Thus, personal injuiy protection benefits, as part of a scheme of compulsory motor vehicle insurance, embraces a policy of avoidance of duplication of recovery and reduction of cost. Dominguez v. Liberty Mutual Insurance Company, 429 Mass. 112, 115 (1999); Amica Mutual Insurance Company v. Bagley, 28 Mass.App.Ct. 85, 89 (1989). Given the arbitration award and the policy language in Part 2 thereof, consistent with the public policy imbedded in the governing statute, the plaintiff is not entitled to recover from the defendant, as further payments for medical expenses would duplicate damages the plaintiff recovered from the tortfeasor.[1]
Since the defendant was justified in its denial of PIP benefits for the reasons discussed above, it has not committed any unfair or deceptive claims settlement practices under the provisions of G.L.c. 176D, §3(9) nor violated any provision of c. 93A.
ORDER FOR JUDGMENT
For the foregoing reasons, a judgment is to enter in favor of the defendant, and the plaintiffs complaint is ordered dismissed.

The plaintiff contends that the collateral source mle prohibits the insurer from reducing her benefits by virtue of a tort recovery. While a mle that bars the admissibility of collateral sources of recovery is consistent with the purpose in tort law of compensation of injured plaintiffs for all the harm suffered as a result of the injuiy wrongfully caused, it has no application in this contract case. Part of the reason for the collateral source rule is a recognition that a plaintiff may have a statutory or contractual obligation to reimburse, from a recovery, for those benefits from such collateral sources, such as with workers’ compensation and other insurers.