Greco, P.J.
As the Supreme Judicial Court recently reiterated, the Massachusetts no-fault insurance system “was intended to control the costs of compulsory automobile insurance.” Metropolitan Prop. & Cas. Ins. Co. v. Blue Cross & Blue Shield of Mass., Inc., 451 Mass. 389, 394 (2008). To help effectuate that goal, the Legislature in G.L.c. 90, §34A set out a ‘“coordination of benefits’ scheme providing for the sharing of costs between automobile and health insurers.” Id. at 391. On this appeal, we are called upon to determine the scope of that coordination.
There has never been a dispute about the facts in this case. The trial judge heard the matter on a “Case Stated,” and found for Arnica Mutual Insurance Company (“Arnica”). Although Advanced Spine Centers, Inc. (“Advanced”) filed requests for rulings of law, no action was taken on them. This appeal was taken under Rule 8C of the Dist/Mun. Cts. R. A D. A. In 402 Rindge Corp. v. Tsao, 2002 Mass. App. Div. 30, we noted that an appeal is available where the trial judge agreed to be bound by the agreed statement of facts, and where only a question of law remained for the court's determination. Id. at 32 n.5. Essentially, that is the posture of this appeal. “Thus we have before us everything which was before the trial judge, and we decide the questions of law involved unaffected by his decision.” Tucci v. DiGregorio, 358 Mass. 493, 494 (1970).
The Case Stated and the accompanying documents indicate the following. On August 16,2002, Carlos Pena (“Pena”) was injured in an accident while an occupant in a vehicle insured by Arnica. From August 21 through November 25,2002, he was treated by chiropractors employed by Advanced. Pena’s injuries were causally related to the accident; the treatment provided by Advanced was necessary; and a personal injury protection (“PIP”) application and Advanced’s bills were timely submitted to Arnica. Pena had a health insurance policy with Tufts Health Plan (‘Tufts”), and so notified both Advanced and Arnica. When Advanced sought payment from Arnica in the amount of $4,330.00, Arnica paid $2,000.00 and notified Advanced and Pena that the balance had to be submitted to Tufts for consideration. Advanced thereupon submitted all of the $4,330.00 in bills to Tufts. In response, Tufts paid only the bill for the initial examination ($175.00); it declined to pay $2,135.00 of the balance on the grounds that Advanced was not within Tufts’s network of providers, and the treatments and services administered were not covered by Pena’s contract with *242 Tufts. When notified of the action taken by Tufts, Arnica paid an additional $385.00, leaving an unpaid balance of $1,770.00, which Advanced sought in this lawsuit.
A closer examination of the bills submitted by Advanced and Arnica’s responses (Exhibits B and D to the Case Stated) reveals the following. From August 21, 2002 to November 19, 2002, Pena underwent continual, often daily, treatment with Advanced. For each day of treatment, Advanced billed for various items, some treatments repeated each time, others added here and there. The course of treatment, however, was, with some exceptions, generally consistent during the whole period. Although the Case Stated does not indicate when Advanced submitted its bills, Arnica made the $2,000.00 payment referred to above by letter dated November 12, 2002. Advanced applied the $2,000.00 to its charges chronologically, starting with the earliest date of service. Thus, the $2,000.00 payment covered all services rendered through September 25,2002. As noted above, Arnica initially declined to make any further payments, but did subsequently pay an additional $385.00. With respect to the bills for services provided after September 25,2002, it would appear from our own review of the exhibits that Tufts did not pay (1) $1,050.00 of those charges because Advanced was not a Tufts provider, and (2) $880.00 of them because they were not covered by Pena’s policy.
Arnica argues that it was entitled, indeed required, to look at all of the bills from the beginning of Pena’s treatment and pay only those for services that were not covered by Tufts, and that it could decline to pay for any services that Tufts would have paid for but for the fact that Pena chose to go to a chiropractor outside of Tufts’s network of providers. Advanced, on the other hand, argues that the PIP statute requires that the insurer pay the initial $2,000.00 of bills without factoring in the existence of health insurance in any way. Under this theory, Arnica would be able to consider the availability of Pena’s health insurance only after it had paid out $2,000.00 in benefits. To put the issue more starkly, if Arnica is right, a PIP insurer would never have to pay a cent if the motorist, or an occupant, had health insurance, but chose to go out of its network of providers for services that would have otherwise been covered.
We must start with the statute. Stripped of language irrelevant here, ‘“[p]ersonal injury protection’... provide[s] for payment to the named insured... [and to] a guest occupant... of all reasonable expenses incurred within two years from the date of accident for necessary medical, surgical, x-ray, and dental services ... to the amount or limit of at least eight thousand dollars. ...” G.L.c. 90, §34A. However, “ [n] otwithstanding the foregoing, personal injury protection provisions shall not provide for payment of more than two thousand dollars of expenses incurred within two years from the date of accident for... [such] services... if, and to the extent that, such expenses have been or will be compensated... pursuant to any policy of health, sickness or disability insurance....” Id. A claim for PIP benefits “shall be presented to the [insurance] company providing such benefits as soon as practicable after the accident occurs ..., and in every case, within at least two years from the date of the accident.. .. [PIP] benefits ... shall be due and payable as loss accrues, upon receipt of reasonable proof of the fact and amount of expenses and loss incurred....” G.L.c. 90, §34M.
We take this language to mean that the PIP insurer must pay up to $2,000.00 in benefits for injuries causally related to the accident regardless of whether the injured party has health insurance, provided the bills were reasonable and the treatment necessary. Arnica argues that under the statute, it is not required to pay more *243 than $2,000.00, but may pay less if the claimant has health insurance. However, the statute sets out an initial obligation to pay and then provides for an exception. By analogy, for the initial $2,000.00 of expenses, the PIP insurer is the primary plan that “must pay or provide its benefits as if the secondary plan or plans did not exist,” 211 CMR §38.05(1), while for expenses between $2,000.00 and $8,000.00, it becomes a secondary plan that “may take the benefits of another plan into account.” Id. §38.05 (2). See Metropolitan Prop. & Cas. Ins. Co., supra at 398. More directly, we see nothing in the case law supporting Arnica’s position.
As discussed in Pinnick v. Cleary, 360 Mass. 1 (1971), with the passage of “no-fault,” the Legislature set up an arrangement between a motorist and his automobile insurer. The insured gets “the security of prompt and certain recovery to a fixed amount of the most salient elements of his out-of-pocket expenses.... In return for this he surrenders the possibly minimal damages for pain and suffering....” (emphasis supplied). Id. at 6. While it was hoped that the costs of his insurance would go down, the insured still had to pay a premium for his PIP coverage. This recognition of certain recovery is consistent with the notion that any bar to recovery would relate only to the cause of the injuries, the necessity of the treatment, and the reasonableness of the bill. Health insurance became relevant only when the statute was amended in 1988 to increase the amount of available PIP benefits to $8,000.00. “Under the new statutory scheme ..., the automobile insurer would only be responsible for the first $2,000 of medical-related expenses, after which the... health insurer, if any, would cover the expenses.” Creswell v. Medical W. Community Health Plan, Inc., 419 Mass. 327, 330 (1995). Any additional medical expenses “not covered by the health insurer would be paid by the PIP carrier up to $8,000.” Id. Again, there was no intimation from the Court that health insurance played any role in the recovery of the first $2,000.00.
Nor was there any such signal in Dominguez v. Liberty Mut. Ins. Co., 429 Mass. 112 (1999). There, the Court noted, “Section 34A, by its terms, expresses a legislative recognition that available health insurance reduces the cost of motor vehicle insurance by eliminating the need for additional PIP coverage, and codifies a legislative mandate that claimants utilize existing health insurance for medical expenses which exceed the $2,000 limit on an automobile insurer’s PIP liability” (emphasis supplied) . Id. at 115. Thus, the coverage would be limited to $2,000.00 except where the claimant's health insurance simply did not cover the necessary treatment. The dissent in Dominguez stated that the statute imposed no duty on the claimant to coordinate benefits between PIP coverage and health insurance, id. at 118, to which the majority responded that there is an obligation not to do what the plaintiff in that case did, namely, seek payments beyond $2,000.00 for treatment from a provider outside the health insurer’s network. Id. at 117 n.2. Finally, in Metropolitan Prop. & Cas. Ins. Co., the Supreme Judicial Court described the “coordination of benefits” scheme set out in the 1988 legislation as the arrangement whereby PIP covers the first $2,000.00 before any health insurance is applicable. Id. at 391. Again, there was no hint of any coordination due with respect to bills under $2,000.00.
Under Arnica’s position, the value of PIP coverage for most motorists in Massachusetts (if not all, in view of G.L.c. HIM) would be minimized even though they pay a premium, albeit small, and even though they gave up the right to sue for pain and suffering. We conclude that the motorist gets $2,000.00 coverage with no *244 questions asked other than those related to cause, reasonableness, and necessity. That was the agreed return for relinquishing the right to sue for pain and suffering. Moreover, under Arnica’s position, the PIP insurer can sit back, wait until all the bills come in, and then allocate its payments as it sees fit, selectively culling out for initial payment the ones not covered by the claimant’s health insurance until the $2,000.00 figure was reached and then deny the remainder because the claimant elected to get treatment outside his or her health plan. Such an option would fly in the face of the legislative mandate that PIP benefits “shall be due and payable as loss accrues.” G.L.C. 90, §34M. One of the purposes of the statute was to get money quickly into the hands of the injured party so that he could pay his health care providers (although we certainly recognize that, as a practical matter, the person providing the treatment often does not look to the patient for payment — a process that the statute explicitly allows). However, the statute and the case law put motorists in Massachusetts on notice that bills beyond $2,000.00 will not be paid by their PIP carrier or their health insurer if they elect to go out of the network of providers in their health plan. Thus, they were on notice that in order to have coverage, they may well have to change health care providers. Nothing in the law, however, would have alerted them that they could face this decision much sooner. More importantly, nothing in their policy would have so alerted them. Arnica’s policy, made an exhibit to the Case Stated, refers to health insurance only with regard to “medical expenses in excess of $2,000.”
In the case at bar, as noted above, the $2,000.00 Arnica initially paid covered all bills for services through September 25, 2002. Arnica appropriately declined payment of bills totaling $1,100.00 for services performed after September 25th on the ground that Advanced was an out-of-network provider. The remainder of the bills, however, totaling $1,130.00, were for treatment not covered by Pena’s health insurance, whether or not administered by a Tufts provider, which Arnica was, thus, obligated to pay. After Arnica’s additional payments of $175.00 and $385.00 are credited, there remained a balance of $570.00, which Arnica was required to pay.
Accordingly, the judgment for the defendant is vacated. Judgment is to be entered in the trial court for the plaintiff on Count Y of the complaint in the amount of $570.00, plus interest and costs. Attorney’s fees are awarded in the amount of $8,602.00, the amount agreed upon by the parties as a proper award in the event that the plaintiff prevailed.
So ordered.