Metropolitan Property and Casualty Insurance Co. *v.* Blue Cross and Blue Shield of Mass., Inc.

## Metropolitan Property and Casualty Insurance Company *vs.* Blue Cross and Blue Shield of Massachusetts, Inc.

Suffolk. January 10, 2008. - May 12, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Insurance,* Motor vehicle personal injury protection benefits, Health and accident, No-fault insurance, Coordination-of-benefits clause. *Statute,* Construction.

Discussion of the statutory framework in Massachusetts providing for the coordination of benefits between automobile and health insurers for medical expenses arising from injuries sustained by a common insured, and discussion of the statutory provisions requiring automobile insurers to offer optional medical, or "MedPay," benefits. [391-393]

In an action in Superior Court between a motor vehicle insurer and a health insurer over which should pay for the medical treatment of a common insured who had been injured in an automobile accident, the judge did not err in granting summary judgment in favor of the defendant health insurer, where nothing in the applicable coordination of benefits statute, G. L. c. 90, § 34A, prohibited the health insurer from deferring coverage due to the insured's purchase of optional medical payment benefits as part of his automobile insurance policy. [393-398]

Civil action commenced in the Superior Court Department on February 4, 2005.

The case was heard by *Bruce R. Henry,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Glenda H. Ganem (Joseph R. Ciollo* with her) for the plaintiff.

*Sara A. Walker* for the defendant.

The following submitted briefs for amici curiae:

*Richard Hodyl, Jr.,* & *Richard S. Thomas,* of Illinois, & *Myles W. McDonough* for Property Casualty Insurers Association of America.

*Stephen V. Saia* for Lawrence Stefanik.

*Sarah Messina* for Massachusetts Association of Health Plans.

BOTSFORD, J. This case involves a dispute between a motor vehicle insurer and a health insurer over which company should pay for the medical treatment of a common insured who was injured in an automobile accident. The two insurers agree that under G. L. c. 90, § 34A (defining "[p]ersonal injury protection"), the first $2,000 in medical costs are to be paid out of the personal injury protection (PIP) benefits available under the mandatory provisions of the automobile insurance policy. They part company, however, in answering the question at the heart of this case: whether a health insurer may defer coverage of medical costs above $2,000 where the insured has purchased, as part of his automobile policy, optional medical payment (Med-Pay) benefits. Because we find nothing in § 34A or any other statute to prohibit a health insurer from deferring due to the existence of MedPay, we affirm the decision of the Superior Court granting summary judgment for the defendant health insurer.[1]

1. *Background.* The summary judgment record reflects the following undisputed facts. In May, 2002, Bernard Rice was injured in an automobile accident while he was a passenger in a motor vehicle insured by the plaintiff, Metropolitan Property and Casualty Insurance Company (Metropolitan). Rice was also covered by a health insurance policy issued by the defendant, Blue Cross and Blue Shield of Massachusetts, Inc. (Blue Cross). Rice received medical treatment for his injuries (from a provider within his Blue Cross network) and submitted the bills, which amounted to $5,266, to Metropolitan for payment. Metropolitan paid the first $2,000 in medical expenses pursuant to the PIP coverage in its policy, and then informed Rice that he should submit the balance of his medical bills to Blue Cross for payment. Blue Cross denied coverage, however, citing a clause in its subscriber certificate that provided in relevant part, "[u]nless otherwise required by law, coverage under this contract will be secondary when another plan [defined to include 'automobile insurance, including medical payments coverage'] provides you

---

[1] We acknowledge the amicus curiae briefs submitted by the Massachusetts Association of Health Plans, the Property Casualty Insurers Association of America, and Lawrence Stefanik.

with coverage for health care services." Because the Metropolitan automobile policy covering Rice included $10,000 of optional MedPay benefits, Blue Cross refused to pay Rice's medical bills. Metropolitan brought suit against Blue Cross, Rice, and his health care provider, seeking a declaration that Metropolitan was not obligated to provide medical benefits to Rice beyond the first $2,000 in PIP coverage.[2] On cross motions for summary judgment, a judge in the Superior Court allowed the motion of Blue Cross and denied Metropolitan's motion. Metropolitan appealed, and we transferred the case to this court on our own motion.

2. *Statutory framework.* The Massachusetts "no-fault" insurance plan, adopted in 1970, originally provided for PIP benefits (up to $2,000) to be paid in place of tort recovery for injuries that caused less than $500 in medical expenses. See § 34A (defining "[p]ersonal injury protection"), as amended through St. 1970, c. 670, §§ 1, 2; G. L. c. 90, § 34M, inserted by St. 1970, c. 670, § 4; G. L. c. 231, § 6D, inserted by St. 1970, c. 670, § 5. See also *Pinnick* v. *Cleary,* 360 Mass. 1, 5-10 (1971). In 1988, in an effort to bring the statutory amounts in line with escalating medical costs and further to control automobile insurance premiums, the Legislature increased the tort threshold to $2,000 and increased PIP coverage to $8,000, but provided that PIP would pay only the first $2,000 in medical expenses in cases where the insured also had health insurance that would cover expenses above that amount. See § 34A, as amended through St. 1988, c. 273, §§ 15-16; G. L. c. 231, § 6D, as amended by St. 1988, c. 273, § 55. See also *Creswell* v. *Medical W. Community Health Plan, Inc.,* 419 Mass. 327, 329-330 (1995). This "coordination of benefits" scheme providing for the sharing of costs between automobile and health insurers is expressed in two sentences in the final paragraph of § 34A:

> "[P]ersonal injury protection provisions shall not provide for payment of more than two thousand dollars of expenses incurred within two years from the date of accident for [medical and funeral services] if, and to the extent that,

---

[2]Neither Bernard Rice nor his health care provider filed an appearance in the action.

392                             451 Mass. 389 (2008)

Metropolitan Property and Casualty Insurance Co. *v.* Blue Cross and Blue Shield of Mass., Inc.

such expenses have been or will be compensated, paid or indemnified pursuant to any policy of health, sickness or disability insurance . . . . No policy of health, sickness or disability insurance . . . shall deny coverage for said expenses because of the existence of personal injury protection benefits."

§ 34A, as amended through St. 1988, c. 273, § 16. Under these provisions, PIP only covers medical expenses above $2,000 if they are not covered by health insurance. Moreover, even when there is health insurance, PIP does not cover claims denied by a health insurance provider because the insured has failed to comply with the health insurance contract, for example by seeking out-of-network care. *Dominguez* v. *Liberty Mut. Ins. Co.*, 429 Mass. 112, 115-117 (1999).

MedPay benefits are not part of the statutory scheme that established the no-fault system with its central feature of PIP benefits. Since 1943, G. L. c. 175, § 111C, has authorized, for various types of liability insurance policies, including automobile policies, optional endorsements to provide coverage for reasonable medical and related expenses.[3] G. L. c. 175, § 111C, inserted by St. 1943, c. 375, § 1. Beginning in 1968, however, under G. L. c. 175, § 113C, automobile insurers doing business in the Commonwealth have been required to offer every person purchasing a policy the option of purchasing "medical coverage, so called, . . . to a limit of at least five thousand dollars."[4] G. L. c. 175, § 113C, as amended by St. 1968, c. 643, § 3. This obligation to offer optional medical, or MedPay, benefits is

---

[3]At least as of 1959, automobile insurers in the Commonwealth were in the practice of offering optional medical coverage pursuant to this statute. See Report of the Special Commission Relative to the Motor Vehicle Laws and the Insurance Laws as They Relate to Motor Vehicles and Certain Related Matters, 1959 Senate Doc. No. 466 at 27, 37.

[4]The text omitted from the quoted provision read, "and of property damage, so called," so that the entire phrase was "of medical payments, so called, and of property damage, so called, to a limit of at least five thousand dollars." G. L. c. 175, § 113C, as amended by St. 1968, c. 643, § 3. While it might have been argued that the $5,000 minimum applied only to property damage coverage, the mandate to offer medical payments coverage in some amount was clear as of 1968. In 1975 the Legislature further amended the section to remove the reference to property damage, leaving simply "medical coverage, so-called, to a limit of at least five thousand dollars." G. L. c. 175, § 113C, as amended through St. 1975, c. 707, § 3.

451 Mass. 389 (2008)                                393

Metropolitan Property and Casualty Insurance Co. *v.* Blue Cross and Blue Shield of Mass., Inc.

reflected in Part 6 of the standard Massachusetts automobile insurance policy (policy).[5] In particular, Part 6 of the seventh edition of the policy, applicable to the accident in this case, provides in relevant part: "Under this Part, we will pay reasonable expenses for necessary medical and funeral services incurred as a result of an accident. . . . We must sell you limits of $5,000 per person if you want to buy them." Thus, it appears that G. L. c. 175, § 111C, authorizes automobile insurers to offer MedPay coverage, and G. L. c. 175, § 113C, requires them to do so.[6] Accord *Morin* v. *Massachusetts Blue Cross, Inc.*, 365 Mass. 379, 385 & n.5 (1974).

3. *Discussion.* Blue Cross argues that the language in its subscriber certificate providing that its coverage "will be secondary" when another insurance policy covers health care costs permits it to decline to pay medical bills submitted by an insured

[5]The language of the standard Massachusetts automobile insurance policy (policy) is dictated by the Commissioner of Insurance. *Goodman* v. *American Cas. Co.*, 419 Mass. 138, 140 (1994).

[6]The parties take the position that only one of these two sections regulates MedPay, and they disagree about which one: Blue Cross asserts that G. L. c. 175, § 111C, governs MedPay, while Metropolitan contends that G. L. c. 175, § 113C, is the appropriate legislative source for the benefit. As indicated in the text, we conclude that both sections apply, and in any event, nothing turns on the point.

The parties also disagree about the legislative purpose underlying MedPay. Metropolitan claims that MedPay is intended to cover expenses not otherwise covered under a health insurance plan or PIP, such as copayments, out-of-network care, and out-of-formulary prescription medications. Blue Cross, on the other hand, asserts that a main benefit of MedPay is that injured insureds can obtain coverage for their medical expenses and also seek damages in tort, without having the tort recovery subject to subrogation by the health insurance provider pursuant to G. L. c. 111, § 70A. See *Creswell* v. *Medical W. Community Health Plan, Inc.*, 419 Mass. 327, 331 (1995) (health insurer can place lien on proceeds of tort action for medical expenses it covers above first $2,000 paid by PIP). There appears to be no legislative history supporting either of these positions, and it seems quite probable that MedPay was originally intended to cover medical expenses in the event of an accident for people who did not have health insurance — a benefit that may be approaching irrelevance in light of the recently enacted "universal" health care mandate. G. L. c. 111M, § 2, inserted by St. 2006, c. 58, § 12. Both parties have argued that a ruling in their favor is required in order to carry out the legislative intent of MedPay and to secure to MedPay purchasers the benefit of their bargain. However, because we can find no reliable indication of the consumer motivation for purchasing MedPay, or of the legislative purpose underlying it, our analysis must focus instead on the plain language of the relevant statutes.

who has MedPay benefits available under his automobile insurance policy. Metropolitan counters that Blue Cross's position violates the letter and the spirit of the "coordination of benefits" provision in the final paragraph of § 34A. We agree with Blue Cross.

By its terms, the applicable coordination of benefits provision in § 34A only prohibits a health insurer from denying coverage because of the existence of PIP benefits[7]; the provision contains no such prohibition with regard to MedPay benefits. As for the purpose of the law, the no-fault system enacted in 1970 was intended to control the costs of compulsory automobile insurance, and the requirement, added in 1988, that insureds access available health insurance before collecting more than $2,000 in PIP benefits furthers that goal. *Dominguez* v. *Liberty Mut. Ins. Co.*, 429 Mass. at 115. A health insurer's deferral to its insured's optional MedPay benefits does nothing to undermine the legislative goal of controlling the cost of *compulsory* insurance.

Metropolitan, however, asserts that when Blue Cross denies coverage because of the existence of MedPay, if Metropolitan must cover those expenses, it will pay them under the PIP benefits offered by its policy, rather than MedPay. The practical result, it suggests, is that the health insurer is actually deferring to PIP and thereby effecting an "end run" around the coordination of benefits provisions of § 34A. This outcome, however, is not required by the statute: § 34A dictates that PIP will not cover medical expenses over $2,000 "if, and to the extent that," health insurance will cover them, but it does not say that if health insurance will not cover such expenses, they *must* be covered by PIP — to the exclusion of MedPay or some other type of optional coverage.[8] Moreover, paying medical costs from PIP when the health insurer has denied coverage because of the existence of MedPay is not only illogical, it is contrary to

---

[7]"No policy of health, sickness or disability insurance . . . shall deny coverage for [medical] expenses *because of the existence of personal injury protection benefits*" (emphasis supplied). G. L. c. 90, § 34A, last par.

[8]Indeed, in *Dominguez* v. *Liberty Mut. Ins. Co.*, 429 Mass. 112, 112-113 (1999), this court expressly recognized that there are circumstances (for example, out-of-network care) in which PIP benefits will not cover health care bills denied by the health insurance provider. See *Mejia* v. *American Cas. Co.*, 55 Mass. App. Ct. 461, 466 (2002).

451 Mass. 389 (2008) 395

Metropolitan Property and Casualty Insurance Co. *v.* Blue Cross and Blue Shield of Mass., Inc.

the legislative intent of § 34A to reduce the cost of compulsory motor vehicle insurance. Therefore, when a health insurer denies coverage because of a clause in its contract allowing it to defer to MedPay, the automobile insurer must pay those expenses under MedPay, not under PIP.

Metropolitan points to language in the standard policy that it claims prevents it from using MedPay benefits to pay any health care bills over $2,000 deferred by Blue Cross. In particular, Metropolitan focuses on the language in the policy's Part 6, covering MedPay, that states: "We will not pay under this Part for any expenses that are payable, or would have been payable except for a deductible, under the PIP coverage of this policy or any other Massachusetts auto policy." Additionally, Part 2 of the policy, covering PIP benefits, provides: "If anyone is entitled to PIP benefits and also to benefits under another Part of this policy, we will pay from this Part first." However, the wording of these two clauses renders them inapplicable where, as we have just determined is the case here, the health care expenses are not in fact payable under PIP because the coordination of benefits mandate of § 34A prohibits the use of PIP benefits to pay them. It is true that the policy also states, in Part 2 covering PIP, that "[w]e will . . . pay medical expenses in excess of $2,000 . . . which will not be paid by a health plan." This statement is not absolute, however: as previously stated, see note 8, *supra*, in some circumstances, PIP does not pay costs denied by a health plan.[9] See *Dominguez* v. *Liberty Mut. Ins. Co.*, 429 Mass. at 112-113. In any event, it is always open to automobile insurers to petition the Division of Insurance (division) to change the language of the policy so as to clarify that it does not require the result of which they complain.

Metropolitan further argues that Blue Cross "has failed to identify any statute which expressly permits it to defer to Med-Pay coverage." The more salient point, however, is that Metropolitan has failed to identify any statutory language — in § 34A; G. L. c. 175, § 111C; G. L. c. 175, § 113C; or any

---

[9]The exception for out-of-network care is in fact acknowledged in the policy itself: "We will not pay for medical expenses in excess of $2,000 that the health plan would have paid had the injured person sought treatment in accordance with the requirements of the health plan."

other statute — that prohibits such deferral. We conclude, therefore, that Blue Cross's practice of denying coverage because of the existence of MedPay is permissible. Cf. *Creswell* v. *Medical W. Community Health Plan, Inc.*, 419 Mass. 327, 331 (1995) (health insurer may not place lien on its insured's PIP benefits, but may assert lien against insured's recovery from third-party tortfeasor because "[n]othing in [§ 34A] . . . prohibits" insurer from doing so).

The parties have advanced various subsidiary arguments in support of their respective positions, which we address briefly. First, as Blue Cross points out, it appears that the result we reach today is one that the division has previously adopted. In a September, 1990, bulletin designated Division of Insurance Bulletin B-90-2, the Commissioner of Insurance (commissioner) stated,

> "[W]here there is health insurance coverage available, . . . medical expenses over $2,000 are not payable under PIP, so MedPay begins to provide coverage at that point, not after $8,000 of PIP benefits have been exhausted. Barring language in the health insurance contract allowing it to defer primary coverage to MedPay . . . after the claimant has submitted $2,000 in medical expenses to the PIP carrier, the claimant may submit further medical bills to either MedPay or the health insurer, or both."[10]

The division reiterated this position in a 2003 letter from its as-

---

[10]The suggestion in the second quoted sentence that insureds may choose whether to seek coverage from their health insurer, MedPay, or both has been rejected by the Appeals Court in *Mejia* v. *American Cas. Co.*, 55 Mass. App. Ct. 461 (2002). The court concluded in that case that even when an injured insured has MedPay benefits available, he or she must first submit any health care bills above $2,000 to the health insurer for consideration before the bills may be forwarded to the automobile insurer for payment. *Id.* at 466. The *Mejia* court drew this conclusion from the language of the standard policy. See *id.* at 464-466. It bears noting that nothing in the *Mejia* case suggests that the *Mejia* plaintiffs' health insurance policies had deferral provisions similar to the Blue Cross subscriber certificate at issue in this case. Whether or not the health insurance policy contains a deferral provision for MedPay, we agree with the Appeals Court in the *Mejia* case that after collecting $2,000 in medical coverage under PIP, an insured must submit further medical bills to his or her health insurance provider for potential coverage. If the health insurer denies coverage, the insured may then submit the bills to the automobile insurer "for consideration under the PIP coverage of the policy." *Id.* at 466. If

451 Mass. 389 (2008) 397

Metropolitan Property and Casualty Insurance Co. *v.* Blue Cross and Blue Shield of Mass., Inc.

sistant general counsel to counsel for the Massachusetts Chiropractic Society stating:

> "[I]f [a] health insurance contract contains language deferring primary coverage to the Medical Payments [c]overage . . . then the Medical [P]ayments coverage should provide payment for any and all medical bills up to [its] limit . . . . Typically, if the health provider has deferring language in their [*sic*] contract then the PIP pays the first $2,000 in bills, Med Pay pays up to its limit and then the [h]ealth [p]rovider would pay for the medical expenses in accordance with its contract provisions and any uncovered bills may be paid by the PIP coverage if there is any remaining PIP money. . . . It is this Division's opinion that the above sequence of payment is the standard practice between the PIP, Medical Payments and [h]ealth [i]nsurance providers."

While statements such as these are entitled to less deference than official agency actions, see, e.g., *Niles* v. *Boston Rent Control Adm'r*, 6 Mass. App. Ct. 135, 149 (1978), and of course deserve no deference if they misapply the law, see *Hartford Ins. Co.* v. *Hertz Corp.*, 410 Mass. 279, 287 n.9 (1991), they are nevertheless useful in our effort to interpret ambiguous statutory provisions relevant to the agency's area of expertise. See *Colby* v. *Metropolitan Prop. & Cas. Ins. Co.*, 420 Mass. 799, 806 (1995) (commissioner's interpretation of relevant statutes entitled to deference).[11]

The division's position is also expressed in the coordination of benefits regulations it has promulgated, 211 Code Mass. Regs. §§ 38.00 (1993). These provisions appear to make MedPay coverage primary and Blue Cross's health insurance secondary. The regulations define the term "[p]lan" to include "the medical benefits coverage in automobile policies to the extent permitted

---

PIP is unavailable — a determination that will depend on the health insurer's reasons for denying coverage — then any available MedPay benefits will "come into play." *Id.*

[11]In addition, the division's view that where there is a deferral provision in the health insurance policy, MedPay begins paying after the insured has incurred $2,000 in medical expenses is relevant because the Commissioner of Insurance regulates the rates for MedPay premiums, G. L. c. 175E, § 2, and has presumably taken into consideration the division's interpretation of MedPay's coverage in establishing those rates.

by law," and then provide that a "[p]rimary [p]lan" is one that "has no order of benefit determination rules," which MedPay as defined in the policy does not (at least with respect to health insurance). 211 Code Mass. Regs. § 38.03. Because Blue Cross does have order of benefit determination rules (i.e., the clause in its subscriber certificate providing for deferral to MedPay), it appears to be a "secondary plan." See *id.* Under 211 Code Mass. Regs. § 38.05, a primary plan "must pay or provide its benefits as if the secondary plan or plans did not exist," while a secondary plan "may take the benefits of another plan into account."[12] The division's coordination of benefits regulations thus permit Blue Cross to defer coverage when the insured has MedPay benefits.[13]

4. *Conclusion.* Because we find nothing in the statutory language governing PIP or MedPay to prohibit health insurers from deferring coverage due to the existence of MedPay benefits, we affirm the order of the Superior Court judge granting summary judgment in favor of the defendant Blue Cross.[14]

*So ordered.*

---

[12]The conclusion that MedPay constitutes primary coverage accords with the court's holding in *Allstate Ins. Co.* v. *Bearce,* 412 Mass. 442, 448-449 (1992), that an automobile insurer must cover medical expenses under Med-Pay even if the injured insured has been fully compensated for his injuries by the liable party or by underinsured motorist coverage.

[13]Metropolitan also argues that Blue Cross's deferral clause is impermissible because "[a]n insurance policy's 'other insurance' clause is only permitted if the 'other insurance' referenced therein covers the same risk as the insurer seeking the benefit of the clause." See *McCormick* v. *Travelers Indemnity Co.,* 22 Mass. App. Ct. 636, 639 (1986). Metropolitan claims that MedPay covers a different risk than health insurance because "MedPay coverage . . . only exists after an insured claimant incurs medical expenses beyond $8,000.00 and does not have health insurance." As the discussion above reflects, we reject Metropolitan's restricted view of when MedPay benefits may come into play. From a common-sense perspective, MedPay is most appropriately characterized as insurance against the risk of medical expenses resulting from an automobile accident — the same risk covered by the health insurer in this situation. See *Morin* v. *Massachusetts Blue Cross, Inc.,* 365 Mass. 379, 384-387 (1974). The "other insurance" clause in Blue Cross's policy is therefore permissible.

[14]We recognize that, as Metropolitan argues, this outcome may discourage consumers from purchasing MedPay coverage. However, the outcome is dictated by the plain language of § 34A. If the Legislature takes a different view or wishes to increase incentives for consumers to purchase MedPay coverage, it can amend the statutory provisions accordingly.