DIANE GOLCHIN *vs.* LIBERTY MUTUAL INSURANCE COMPANY.

Worcester. April 7, 2011. - July 25, 2011.

Present: IRELAND, C.J., SPINA, BOTSFORD, GANTS, & DUFFLY, JJ.

*Practice, Civil,* Motion to dismiss. *Contract,* Insurance. *Insurance,* Motor vehicle insurance, Construction of policy, Motor vehicle personal injury protection benefits, Medical supplementary coverage, Coordination-of-benefits clause.

This court concluded that a claimant may seek medical expense benefits under the "medical payments" coverage of a standard Massachusetts automobile insurance policy, even where the claimant has already recovered for those expenses under a separate policy of health insurance. [225-237]

CIVIL ACTION commenced in the Superior Court Department on September 30, 2008.

A motion to dismiss was heard by *C. Jeffrey Kinder,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kenneth D. Quat (Elliot Beresen* with him) for the plaintiff.

*Myles W. McDonough (Christopher M. Reilly* with him) for the defendant.

*Kimberly E. Winter, J. Michael Conley, & Michael C. Najjar,* for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

*E. Michael Sloman,* for Automobile Insurers Bureau, amicus curiae, submitted a brief.

SPINA, J. In this proceeding we consider whether a claimant may seek medical expense benefits under the "medical payments" coverage (MedPay) of a standard Massachusetts automobile insurance policy (auto policy) where she has already recovered for those expenses under a separate policy of health insurance. Diane Golchin filed suit against Liberty Mutual Insurance Company (Liberty Mutual), both personally and on behalf of a putative class of similarly situated individuals, alleging that

the company's failure to disburse MedPay benefits to her constituted a breach of contract, a breach of an implied covenant of good faith and fair dealing, and a violation of G. L. c. 93A, § 2. Liberty Mutual successfully moved to dismiss the complaint on the ground that Golchin is not entitled to MedPay benefits and that she has therefore failed to allege facts plausibly suggesting that she is entitled to relief. The Appeals Court affirmed in an unpublished memorandum and order pursuant to its rule 1:28. *Golchin* v. *Liberty Mut. Ins. Co.*, 76 Mass. App. Ct. 1119 (2010). We granted Golchin's application for further appellate review. For the reasons set forth herein, we reverse the order allowing the motion to dismiss.

1. *Standard of review.* The motion judge dismissed Golchin's complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), for failure to state a claim on which relief can be granted. In reviewing the sufficiency of a complaint under rule 12 (b) (6), "[w]e take as true 'the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor. . . .' *Blank* v. *Chelmsford Ob/Gyn, P.C.*, 420 Mass. 404, 407 (1995)." *Marram* v. *Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 45 (2004), quoting *Warner-Lambert Co.* v. *Execuquest Corp.*, 427 Mass. 46, 47 (1998). "What is required at the pleading stage are factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief . . . ." *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008), quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . ." *Iannacchino* v. *Ford Motor Co.*, *supra* at 636, quoting *Bell Atl. Corp.* v. *Twombly*, *supra* at 555.

As a result of imprecise pleading, however, it is not immediately clear that this is the proper standard of review. The motion judge ruled on what Liberty Mutual captioned as "Defendant, Liberty Mutual Insurance Company's, Motion to Dismiss Plaintiff's Complaint." In that motion, however, Liberty Mutual asserts at least one fact — that Golchin refused to provide Liberty Mutual with a copy of her health insurance policy — that does not appear on the face of the pleading. In addition,

Liberty Mutual attached to the motion a number of documents that are not contained in the pleadings, including a copy of the auto policy, Golchin's G. L. c. 93A demand letter, and Liberty Mutual's written response.

Liberty Mutual's motion can be interpreted only as a motion to dismiss Golchin's complaint pursuant to rule 12 (b) (6), for failure to state a claim on which relief can be granted. However, under rule 12 (b), "[i]f, on any motion asserting the defense numbered (6), . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment" rather than as one to dismiss. See J.W. Smith & H.B. Zobel, Rules Practice § 12.7, at 199 (2d ed. 2006). Conversion of the motion into one for summary judgment may therefore have been appropriate because Liberty Mutual's motion relies on facts and documents outside the complaint that were not excluded by the motion judge.[1]

Conversion, however, is not an absolute requirement because "[w]here . . . the plaintiff had notice of [the extrinsic] documents and relied on them in framing the complaint, the attachment of such documents to a motion to dismiss does not convert the motion to one for summary judgment . . . ." *Marram* v. *Kobrick Offshore Fund, Ltd., supra* at 45 n.4. See J.W. Smith & H.B. Zobel, Rules Practice, *supra* at § 12.15, at 216. The standard Massachusetts auto policy attached by Liberty Mutual to its motion clearly falls within this category. See *Marram* v. *Kobrick Offshore Fund, Ltd., supra.* Further, the G. L. c. 93A demand letter and Liberty Mutual's response obviously were available to Golchin before she brought this action and were necessarily relied on by her in drafting the complaint. See *id.* It was thus unnecessary to convert Liberty Mutual's motion from one to dismiss under rule 12 (b) into one for summary judgment under Mass. R. Civ. P. 56, as amended, 436 Mass. 1404 (2002). Accordingly, we apply the standard of review laid out above.

[1]The motion judge made no ruling whether extrinsic evidence was excluded. The order allowing Liberty Mutual's motion does not rely on extrinsic evidence but does mention, in passing, facts not appearing on the face of the complaint. This implies that such evidence was not excluded. Further, the Appeals Court's decision in this case turns entirely on Golchin's failure to produce her health insurance policy, which is a matter entirely outside the pleadings. We accordingly assume that extrinsic evidence was not excluded.

2. *Facts.* Considering that this is an appeal from a motion to dismiss, we summarize the pertinent facts alleged in the complaint[2]:

On September 14, 2006, Golchin was involved in a motor vehicle accident while she was an occupant of her husband's car. The car was insured under a Massachusetts auto policy issued by Liberty Mutual that included optional MedPay benefits of up to $25,000. Golchin sustained significant personal injuries and, as a result of those injuries, incurred medical expenses in excess of $100,000. At the time of the accident, Golchin also was covered under a health insurance policy issued by Blue Cross and Blue Shield of Massachusetts (Blue Cross).

Liberty Mutual paid $2,000 in personal injury protection (PIP) benefits to Golchin as a result of the accident. Golchin also submitted to Liberty Mutual documentation of additional medical expenses and requested payment pursuant to the Med-Pay coverage provided by the Liberty Mutual policy. Liberty Mutual refused to pay these benefits, citing the fact that they already had been paid by Blue Cross under the health insurance policy.

3. *Analysis.* Golchin seeks benefits under a standard Massachusetts auto policy. "We interpret the words of the standard policy in light of their plain meaning, . . . giving full effect to the document as a whole[,] . . . consider[ing] 'what an objectively reasonable insured, reading the relevant policy language, would expect to be covered' . . . [and] interpret[ing] the provision of the standard policy in a manner consistent with the statutory and regulatory scheme that governs such policies." (Citations omitted.) *Given* v. *Commerce Ins. Co.,* 440 Mass. 207, 209 (2003), quoting *Hazen Paper Co.* v. *United States Fid. & Guar. Co.,* 407 Mass. 689, 700 (1990). "Finally, because the approved wording of the standard policy is controlled by the Commissioner of Insurance and not by any insurer (see G. L. c. 175, § 113A), we do not construe ambiguities against the insurer." *Given* v. *Commerce Ins. Co., supra* at 210.

The standard policy contains two coverages implicated by Golchin's claim. First, the policy provides a maximum of

---

[2]To the extent that extrinsic facts are relevant to our analysis, they will be identified as such in the course of our discussion.

$8,000 in PIP benefits. These benefits are the "central feature" of the Massachusetts "no-fault" automobile insurance system. *Metropolitan Prop. & Cas. Ins. Co.* v. *Blue Cross & Blue Shield of Mass., Inc.*, 451 Mass. 389, 392 (2008) (*Metropolitan*). Under the policy, PIP benefits are payable for medical expenses, lost wages, and replacement services and may be claimed by, among others, any person who is injured while occupying an insured vehicle. The second form of relevant coverage is MedPay, one of the eight optional coverages that are offered to insureds under the standard auto policy. MedPay benefits cover "reasonable expenses for necessary medical and funeral services incurred as a result of an accident" by, among others, "anyone occupying [the insured's] auto at the time of the accident."

Under the terms of the standard policy, if PIP benefits are available under any Massachusetts auto policy they are always paid first.[3] *Mejia* v. *American Cas. Co.*, 55 Mass. App. Ct. 461, 465-466 (2002) (*Mejia*) ("it is evident that when PIP coverage is available, payment under PIP is to precede any payments under [MedPay]"). So long as PIP coverage is available and has not been exhausted, MedPay benefits are not payable. See *Dominguez* v. *Liberty Mut. Ins. Co.*, 429 Mass. 112 (1999) (*Dominguez*) (where claimant ignored conditions of his health insurance policy, medical expenses were denied by health insurer and were not payable by PIP); *Mejia, supra* at 466 (interplay of PIP, health insurance, and MedPay benefits, in light of *Dominguez*).

The order in which PIP and MedPay benefits are triggered is relevant to Golchin's claim because the portion of the standard policy addressing PIP states:

> "Some people have a policy of health, sickness, or disability insurance . . . to provide, pay for, or reimburse the cost of medical expenses . . . . If so, we will pay up to $2,000 of medical expenses for any injured person. We

---

[3]Personal injury protection (PIP) provisions of the policy state: "If anyone is entitled to PIP benefits and also to benefits under another Part of this policy, we will pay from this Part first." MedPay provisions state: "We will not pay under this Part for any expenses that are payable, or would have been payable except for a deductible, under the PIP coverage of this policy or any other Massachusetts auto policy."

> will also pay medical expenses in excess of $2,000 for such injured person which will not be paid by a health plan. . . . In any case, our total payment [under PIP] will not exceed $8,000."

This language is required by statute. G. L. c. 90, § 34A. Following an accident, therefore, the first $2,000 in benefits are paid by PIP with benefits above that threshold being payable by health insurance. After the $2,000 threshold has been reached, the standard policy provides that any medical expenses "which will not be paid by a health plan" are payable by PIP and will erode its $8,000 limit of liability. Only after PIP benefits have been exhausted or where they are unavailable does the standard policy provide that MedPay benefits are due. See *Mejia, supra* at 465-466. The standard Massachusetts auto policy therefore contains language expressly precluding the simultaneous payment of health insurance and MedPay benefits at least until the $8,000 limit of PIP benefits has been reached.

Golchin makes no argument that the plain meaning of these policy terms is unclear or that an objectively reasonable insured would conclude that MedPay benefits are payable before PIP benefits have been exhausted. See *Given* v. *Commerce Ins. Co., supra* at 209. Further, this interpretation is precisely the one adopted by the Commissioner of Insurance (commissioner) in Bulletin 2008-12 (bulletin), which provides examples of coordination of benefits between PIP, health insurance, and MedPay coverage. Considering that the commissioner controls the language of the policy, see *id.* at 210, the bulletin's interpretation of the policy and its interaction with other regulations is highly persuasive. See *Metropolitan, supra* at 397 (such bulletins are not binding but nevertheless "useful in our effort to interpret ambiguous statutory provisions relevant to the agency's area of expertise"). Further, other Massachusetts decisions addressing the interplay of PIP and MedPay coverages have reached a similar conclusion.

In the *Mejia* case, the Appeals Court concluded that "payment under PIP is to precede any payments under [MedPay]," and that, after the $2,000 cap to exclusive PIP benefits has been reached, "[t]he availability of PIP in turn depends upon whether the claimant has health insurance for the medical service that

was provided." *Id.* at 466. If the claimant has health insurance and the health insurance claims are not rejected, the *Mejia* court held that PIP is no longer implicated. *Id.* "Only if [health insurance and] PIP benefits were not payable . . . would [MedPay] come into play." *Id.* Because the claimant in *Mejia* had failed to submit claims to her health insurer and had failed to exhaust PIP, it was appropriate for the auto insurer to refuse her claim under MedPay.[4] *Id.*

We considered a slightly different circumstance in the *Metropolitan* case. There, a claimant was injured while a passenger in a vehicle insured by Metropolitan, which paid the first $2,000 in PIP benefits and directed him to his health insurer for payment of the balance. *Id.* The health insurer refused coverage, citing a clause in its policy rendering its coverage excess of any MedPay coverage. *Id.* at 390-391. Metropolitan sought declaratory relief, arguing that the provisions of G. L. c. 90, § 34A, precluded payment of the MedPay benefit. *Id.* We disagreed, holding that the statute "only prohibits a health insurer from denying coverage because of the existence of PIP [rather than MedPay] benefits." *Id.* at 394. As a result, we held that the health insurer's deferral language did not violate the letter or spirit of the statute. *Id.* at 394-395. Further, we concluded that the effect of the health insurance policy's "other insurance" clause was similar to the effect resulting from the *Dominguez* and *Mejia* cases — PIP benefits were unavailable, but MedPay benefits were not. *Metropolitan, supra* at 394-395 & n.8, citing *Dominguez, supra* at 112-113, and *Mejia, supra* at 466.

This analysis would be sufficient to dispose of Golchin's complaint if further facts had not been introduced to the record. Golchin has not alleged that PIP benefits have been exhausted or are unavailable, so factual prerequisites for triggering Med-

---

[4]The claimant in *Mejia* v. *American Cas. Co.*, 55 Mass. App. Ct. 461, 463 (2002), had previously submitted other medical bills to her health insurer. Some of these bills were paid, and others were rejected and submitted to the auto insurer for payment under PIP. *Id.* At some point, in an effort "to avoid the imposition of a lien [on her tort recovery] by the health insurer," *id.* at 463 n.4, and thus ensure that she would retain at least a partial double recovery, the claimant drafted and sent to her auto insurer a demand letter pursuant to G. L. c. 93A. *Id.* at 463. In the letter the claimant sought payment of future medical bills under MedPay rather than PIP or health insurance. *Id.* It was this demand letter that triggered the dispute resolved by the Appeals Court.

Pay coverage do not appear on the face of her complaint. As discussed above, however, Liberty Mutual has introduced additional documents into the record in support of its motion to dismiss. Crucially, Golchin's G. L. c. 93A demand letter and Liberty Mutual's response both state that PIP benefits under the Liberty Mutual policy have been exhausted.[5] Liberty Mutual placed these documents in the record, and Golchin has not objected to their use. Both the motion judge and the Appeals Court have considered them in rendering their decisions. Most importantly, both parties' briefs cite to the G. L. c. 93A letters and rely on factual assertions contained therein. We therefore view the exhaustion of PIP benefits as an agreed fact and continue our analysis on that basis.

As discussed above, the provisions of the standard Massachusetts auto policy link MedPay and health coverage only to the extent that, after $2,000 in PIP benefits, PIP is secondary to health insurance and MedPay is available only where PIP benefits are exhausted or unavailable. See note 3, *supra*. If PIP benefits are exhausted, there is no further language in the standard auto policy that links health insurance and MedPay benefits, so, under the terms of the policy, MedPay benefits are payable. Golchin requested payment of MedPay benefits after the PIP benefits were exhausted, Liberty Mutual refused, and Golchin now seeks relief on the theories set forth in her complaint. Without more, therefore, the alleged facts before us indicate that Golchin's right to relief rises above the speculative level. See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008). In opposition to this conclusion, however, Liberty Mutual argues that various statutes and regulations are controlling and preclude payment of MedPay benefits in these circumstances. See *Given* v. *Commerce Ins. Co.*, 440 Mass. 207, 209-210 (2003). Liberty Mutual's arguments are unpersuasive.

Liberty Mutual's principal argument is based on the bulletin, which addresses the coordination of benefits among PIP, health

---

[5]There is no information in the complaint or in the record before us regarding the existence of additional Massachusetts auto policies triggered by the accident in which Golchin suffered her injuries. We therefore assume that there are no additional PIP benefits that must be exhausted prior to reaching the MedPay layer of coverage.

insurance, and MedPay. The bulletin provides an overview of relevant sources of law, analyzes a number of examples, and states that all claims in excess of the $2,000 PIP threshold must be submitted first to the health insurance carrier and that, "[i]f the health insurance carrier denies coverage, the motor vehicle insurer can determine whether PIP or MedPay applies based upon the reason for the denial." Based on this statement (or similar language elsewhere in the bulletin), Liberty Mutual argues that "the plain language of the 2008 bulletin . . . prohibits [Golchin's] double recovery through payment for the same medical bill under both health insurance and MedPay." Liberty Mutual drastically overstates the support offered to its position by the bulletin.

As an initial matter, we note that Liberty Mutual bases much of its argument on the assertion that the bulletin is "binding on the [c]ourt with the force and effect of a statute." Liberty Mutual's argument on this point, however, falls short. Briefly paraphrased, Liberty Mutual asserts that because the commissioner possesses authority to issue cost control regulations and because the coordination of benefits discussed in the bulletin would control costs, the bulletin is a regulation having the force of law. Assuming, without deciding, that the first two propositions are correct, Liberty Mutual's conclusion does not follow. Merely because the commissioner is possessed of authority regarding a particular topic does not render his every pronouncement regarding that topic a regulation possessing the full force and effect of a statute. See *Global NAPs, Inc.* v. *Awiszus*, 457 Mass. 489, 496-497 (2010) (distinguishing "[g]uidelines issued by an administrative agency" from "regulations adopted pursuant to the Administrative Procedures Act"). Further, there are a number of considerations regarding the status of the bulletin that Liberty Mutual does not address and that do not weigh in its favor.

First, our precedent has treated the commissioner's previous bulletin on this topic as a persuasive interpretation of statutes and policy language but not as an "official agency action" controlling on the court. *Metropolitan, supra* at 396-397. Liberty Mutual does not acknowledge this precedent or explain why a different conclusion is appropriate regarding the bulletin presently under consideration. Second, the bulletin notes that our

analysis in *Metropolitan* is "consistent with the [d]ivision [of insurance's] *position,* previously announced in Bulletin No. 90-02" (emphasis added). The commissioner, therefore, appears to view bulletins as position statements rather than as regulatory actions having the force of law. Where the commissioner does not consider bulletins to be binding regulations, we are not inclined to hold otherwise. Finally, Liberty Mutual presents no information or argument as to how the bulletin was promulgated and whether such procedure was intended (or sufficient) to constitute rule making or some other official agency action. See *Global NAPs, Inc.* v. *Awiszus, supra* at 496 n.11 (noting that method of adoption is key to distinguishing "guidelines" from "regulations"); *Niles* v. *Boston Rent Control Admin.,* 6 Mass. App. Ct. 135, 149 (1978); A. Cella, Administrative Law and Practice §§ 726-737, at 104-120 (1986 & Supp. 2010) (procedures for rule making by Massachusetts administrative agencies). As a result, we conclude that it is appropriate to treat the bulletin as persuasive (so far as it goes) but not as a promulgated regulation having the force of law. See *Metropolitan, supra* at 396-397.

Read in its entirety, the document's clear purpose is to provide insurers with procedural guidance in light of confusing and potentially conflicting provisions in auto policies (requiring that MedPay benefits be excess of PIP), health policies (potentially requiring that health insurance be excess of MedPay), statutes (requiring that health insurance be excess of PIP after the first $2,000 in benefits), and case law (concluding that, depending on policy language, health insurance may be excess of MedPay though PIP has not been exhausted). See G. L. c. 90, § 34A; *Metropolitan, supra* at 395; *Mejia, supra.* Considering these sources, the bulletin advises insurers that, where a health insurer has denied benefits, the auto insurer's determination whether MedPay or PIP benefits are available turns on the health insurer's stated reasons for the denial.

The bulletin does not advise insurers regarding proper procedures where a claimant receives complete recovery from his or her health insurer and nevertheless seeks MedPay benefits for the same expenses. Indeed, the bulletin does not even consider the possibility that such a claim might be filed. Liberty Mutual

infers from this silence that double recovery of medical expenses is impermissible. The bulletin, however, is not a source of positive law, and mere silence in a bulletin cannot be considered a prohibition. Although Liberty Mutual may be correct in inferring that the commissioner did not expect or intend for double recoveries to occur, a mere expectation or intention is not an affirmative regulatory action that would preclude payment of MedPay benefits under the policy. The silence in the bulletin, therefore, although relevant to Golchin's claim under G. L. c. 93A,[6] is not dispositive of her suit and cannot require dismissal of the complaint.

Liberty Mutual also makes a number of arguments that regulations promulgated by the division of insurance with regard to the coordination of benefits, 211 Code Mass. Regs. §§ 38.00 (1995), require the dismissal of Golchin's complaint. First, Liberty Mutual notes that the regulation precludes Blue Cross from establishing a plan that is "always secondary," see 211 Code Mass. Regs. § 38.06(2), and argues that the terms of the Blue Cross plan, therefore, must be examined to determine "which benefit, Blue Cross or MedPay, Golchin would be entitled to [receive]." Because Golchin refuses to produce the Blue Cross policy, Liberty Mutual argues that dismissal is necessary. Similarly, and in the alternative, Liberty Mutual cites a provision in the regulation stating that "a plan which pays for or provides more benefits than it should have . . . may recover the excess from . . . [other] insurance companies." 211 Code Mass. Regs. § 38.08. Liberty Mutual argues that, without reviewing the Blue Cross policy, it cannot determine whether Blue Cross has "provided more benefits than [it] should have"

---

[6]In support of her claims under G. L. c. 93A, Golchin's complaint asserts that Liberty Mutual's conduct was "willful or knowing in nature," "in bad faith," and "with knowledge or reason to know that its conduct violated G. L. c. 93A, [§] 2." In considering a related question, this court has held that an insurer may rely on the diligent and good faith evaluation of counsel and that such reliance is some evidence of good faith on the part of the insurer. See, e.g., *Hartford Cas. Ins. Co.* v. *New Hampshire Ins. Co.*, 417 Mass. 115, 122 n.5 (1994), and cases cited; M.C. Gilleran, Law of Chapter 93A § 9.36, at 440-443, 456-457 (2d ed. 2007). This being the case — and in light of the commissioner's expertise, disinterested position, and regulatory authority — an insurer's reasonable interpretation of a division of insurance bulletin must be considered evidence of good faith on the part of the insurer.

and would thus have a claim against Liberty Mutual that would duplicate Golchin's claim for MedPay benefits. According to Liberty Mutual, therefore, Golchin's claim must be dismissed to avoid "exposing [Liberty Mutual] . . . to possible duplicative payments."[7] Finally, Liberty Mutual asserts that 211 Code Mass. Regs. §§ 38.00 establishes a general "prohibition against double recovery" that precludes payment of MedPay benefits to Golchin where she already has received coverage of her medical expenses. None of Liberty Mutual's arguments based on 211 Code Mass. Regs. §§ 38.00 is persuasive.

Regarding the first two arguments, which rest on Golchin's failure to produce the Blue Cross policy, it is notable that Liberty Mutual fails to address the scope and applicability of the regulation, which provides:

> "The purpose of 211 [Code Mass. Regs. §§] 38.00 is to establish an order in which plans pay their claims when a person is covered by more than one plan. Any plan which contains a Coordination of Benefits provision must comply with 211 [Code Mass. Regs. §] 38.00. A plan that does not contain such a provision may not take the benefits of another plan into account when determining its benefits."

211 Code Mass. Regs. § 38.02. There is no question that MedPay coverage and health insurance are both "plans" within the meaning of the regulation. See 211 Code Mass. Regs. § 38.03. It is similarly clear that the standard Massachusetts auto policy contains no language that might be described as a "coordination of benefits provision." See 211 Code Mass. Regs. § 38.02; 211 Code Mass. Regs. § 38.03 (defining coordination of benefits as "a provision establishing the order in which plans pay their claims"). Pursuant to 211 Code Mass.

---

[7]To some extent, the documents that Liberty Mutual attached to its motion to dismiss undermine the factual basis for this concern. Specifically, Golchin's demand letter and Liberty Mutual's response letter both note that, pursuant to G. L. c. 111, § 70A, Blue Cross has filed a medical lien against Golchin's recovery from the tortfeasor. Blue Cross therefore already has received, or has positioned itself to receive, complete recovery for the amounts that it has paid on Golchin's behalf. If Blue Cross is shielded from any loss, it is not clear that Liberty Mutual's fear of a claim for contribution (or some other action seeking recovery pursuant to 211 Code Mass. Regs. § 38.08 [1995]) is a reasonable one.

Regs. § 38.02, therefore, the Liberty Mutual policy "may not take the benefits of [the Blue Cross policy] into account when determining its benefits." If the Blue Cross policy may not be "taken into account" by Liberty Mutual, then Liberty Mutual's inability to review the Blue Cross is irrelevant to the determination of MedPay benefits. *Id.* Liberty Mutual's two arguments that rest on Golchin's failure to produce the Blue Cross policy are therefore without merit and cannot require dismissal of her suit.

Liberty Mutual's third argument based on 211 Code Mass. Regs. §§ 38.00 is similarly unpersuasive. Liberty Mutual begins by noting that a "secondary plan" may "reduce its benefits so that the total benefits paid or provided by all plans . . . are not more than total allowable expense." 211 Code Mass. Regs. § 38.07. Liberty Mutual does not argue, however, that the standard auto policy is a "secondary plan" entitled to reduce its benefits pursuant to 211 Code Mass. Regs. § 38.07.[8] Instead, Liberty Mutual argues that this language indicates a general prohibition against double recovery by claimants. The language in question, however, refers exclusively to the rights of secondary insurers, which category does not include Liberty Mutual. *Id.* Further, there may be more than one primary plan so the fact that secondary plans are entitled to reduce benefits to avoid duplicative payments does not constitute an explicit prohibition on such recoveries. See 211 Code Mass. Regs. §§ 38.03, 38.07. The prohibition must, therefore, be inferred. In support of this inference, Liberty Mutual turns to the "language and legislative history of the NAIC [National Association of Insurance Commissioners] model regulation adopted by Massachusetts."

In Liberty Mutual's opinion, the language of the NAIC's model regulation "emphasize[s]" the existence of a "double payment prohibition." See II NAIC Model Laws, Regulations and Guidelines 120-1 (2005) (coordination of benefits model regulation). In support of this point, Liberty Mutual asserts that "[t]his prohibition [on double recovery] is established in the

---

[8]The standard Massachusetts auto policy, which lacks a coordination of benefits provision, is not a "secondary plan" because it has no order of benefit determination rules. See 211 Code Mass. Regs. § 38.03 ("[s]econdary [p]lan" is "a plan which is not a primary plan," and "[p]rimary [p]lan" is a plan that "has no order of benefit determination rules").

provisions of the model regulation, a purpose of which is to 'reduce duplication of benefits.' " II NAIC Model Laws, Regulations and Guidelines, *supra* at 120-1, at § 2(B). Liberty Mutual also quotes, with emphasis, the model regulation's definition of "[c]oordination of [b]enefits" to the effect that "a provision establishing an order in which plans pay their claims . . . *so that the combined benefits of all plans do not exceed total allowable expenses.*" II NAIC Model Laws, Regulations and Guidelines, *supra* at 120-3, at § 3(F).

Liberty Mutual may be correct regarding the model regulation. Liberty Mutual's brief fails to acknowledge, however, the fact that 211 Code Mass. Regs. §§ 38.00 is not a wholesale adoption of the NAIC model regulation and that, in promulgating the Massachusetts regulation, the commissioner made substantial changes to the NAIC's model. Compare 211 Code Mass. Regs. §§ 38.00 with II NAIC Model Laws, Regulations, and Guidelines 120-1 (coordination of benefits model regulation). Most crucial, neither of the passages quoted by Liberty Mutual appears in the regulations actually adopted in Massachusetts. Specifically, the purposes of the Massachusetts regulation do not include any reference to the reduction of duplicate benefits, see 211 Code Mass. Regs. § 38.02, and the definition of "[c]oordination of [b]enefits" contained at 211 Code Mass. Regs. § 38.03 omits the particular phrase of the model regulation on which Liberty Mutual's brief places emphasis.

We are thus left to consider that, in regulating the coordination of benefits in Massachusetts, the commissioner was presented with draft language supporting Liberty Mutual's position and decided to exclude it from the regulation actually promulgated. While the model regulation might contain a blanket prohibition on double recoveries (we express no view on the subject), the Massachusetts regulation does not. Comparison of the NAIC model regulations and 211 Code Mass. Regs. §§ 38.00 thus supports a conclusion that is precisely opposite to the one advocated by Liberty Mutual. We therefore hold that, although the Massachusetts coordination of benefits regulation does contain individual sections regarding double recoveries, see, e.g., 211 Code Mass. Regs. § 38.07, those sections are inapplicable here and do not constitute a general ban on duplicative recoveries.

Liberty Mutual's final argument is that the enactment of a "universal" health insurance program in Massachusetts precludes the Blue Cross policy from being anything other than a plan of "primary" insurance. See G. L. c. 111M, §§ 1, 2. This argument appears to be better directed toward the question presented in *Metropolitan*, *supra* at 398 — whether "deferral to MedPay" clauses are enforceable — than the question presented here — whether MedPay and health insurance benefits are simultaneously payable. The argument might be relevant if there were a statute, regulation, or principle requiring that there may not be multiple primary insurers. This, however, is not the case. See 211 Code Mass. Regs. § 38.03 ("There may be more than one primary plan"). Cf. II NAIC Model Laws, Regulations and Guidelines, *supra* at 120-18 (there is no double recovery if model contract language is used because, when no other coordination of benefits rule applies, multiple primary insurers share payment equally). The argument also might be relevant if Liberty Mutual developed the point by identifying a statute, regulation, principle of law, or public policy requiring that primary plans of insurance may not pay duplicative benefits. Liberty Mutual fails to make such an argument despite the fact that, regarding certain forms of indemnity coverage, singular recovery has long been the rule in Massachusetts. See, e.g., *Wiggin* v. *Suffolk Ins. Co.*, 18 Pick. 145, 153 (1836) (Chief Justice Shaw holding as matter of common law that, in "the case of a double assurance" where priority clauses are inoperative, insured may seek either full recovery from one insurer or partial recovery from both). Although Liberty Mutual's failure to make the argument is surprising, we decline to raise the issue sua sponte.[9]

4. *Conclusion.* Taken together, Golchin's complaint and the

---

[9]We are loath to approach such a complicated and close question without the benefit of briefing from the parties. We note that, "[i]f there is no effective coordination of benefits clause, the majority rule is that the insured who paid for hospitalization coverage is entitled to full benefits under both policies even if this payment exceeds the hospital bills." *Nahom* v. *Blue Cross & Blue Shield of Ariz., Inc.*, 180 Ariz. 548, 554 (Ct. App. 1994) (*Nahom*); 12 G. Couch, Insurance § 169:103, at 169-185 (3d ed. 2005); 15 G. Couch, Insurance § 220:47, at 220-56 (3d ed. 2005). This rule appears to rest on the view, see *Nahom*, *supra*, that health insurance policies are "less a contract of indemnity than a form of investment [like life insurance], imposing on the

extrinsic materials submitted by Liberty Mutual contain alleged facts sufficient to "raise a right to relief above the speculative level." *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008). In addition, Liberty Mutual has not demonstrated as a matter of law that Golchin may not receive MedPay benefits when she already has received medical expense benefits under her policy of health insurance. Accordingly, the order allowing Liberty Mutual's motion to dismiss must be reversed and the matter remanded for further proceedings consistent with this opinion.

*So ordered.*

---

insurer an absolute duty to pay if the named condition occurs." *Frost* v. *Porter Leasing Corp.*, 386 Mass. 425, 429 (1982) (*Frost*). See 16 S. Williston, Contracts § 49:10, at 53, 56 (R. Lord 4th ed. 2000) ("Property insurance . . . has been said to be indemnity insurance," whereas "life insurance, properly considered, is thus not a contract of indemnity").

Massachusetts, however, does not necessarily adopt this view of medical insurance. See *Frost, supra* at 430 ("we recognize the indemnity character of medical and hospital expense benefits"); 16 S. Williston, Contracts, *supra* at 53 ("many different types of insurance have been correctly described as contracts of indemnity, including . . . that portion of an automobile policy that provides for the payment of medical expenses"). But see *Allstate Ins. Co.* v. *Bearce*, 412 Mass. 442, 448-449 (1992) (citing *Frost* case to distinguish MedPay coverage from *property* insurance). It is therefore possible (although consideration of the matter requires addressing a thicket of policy considerations and the impact of the medical lien statute, G. L. c. 111, § 70A) that indemnity principles precluding double recovery may apply to benefits sought under MedPay. See, e.g., *Koppers Co.* v. *Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1452 (3d Cir. 1996) ("We begin with the principle of indemnity, a fundamental principle of insurance law which prohibits insurance contracts from conferring a benefit greater than the insured's loss . . ."); 15 G. Couch, Insurance, *supra* at § 217:1, at 217-5 to 217-6 ("as a general rule, the fact that the insured has double coverage does not mean that he or she is entitled to recover twice for the same loss"); 3 J.E. Thomas & F.J. Mootz, New Appleman on Insurance § 22.05, 22-35 to 22-40 (2010) (addressing offsets and credits of payments of other insurers, allocation amongst insurers, and prohibitions on double recovery).